|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | IN THE UNITED STATES DISTRICT COURT | |
| 7 | FOR THE DISTRICT OF ARIZONA | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | NO.  CR 08-00212-TUC-DCB (BPV) |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| RICHARD RENZI, JAMES SANDLIN, | ) | |
| ANDREW BEARDALL, and DWAYNE | ) | |
| LEQUIRE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

On January 15, 2009, Defendant Renzi filed a motion to dismiss the Racketeering and Corrupt Organizations ("RICO") charge in the Superseding Indictment ("SI"). (Doc. No. 261.) The Government filed a timely response (Doc. No. 302) and a reply memorandum was filed thereafter (Doc. No. 315).

The matter came on for Oral Argument before the Court on May 1, 2009. During argument, the Court granted Defendant Renzi's request for additional time to respond to questioning by the Court. Accordingly, following argument, supplemental briefs were filed by both parties (Doc. Nos. 362, 381).

The Court, having considered the briefing, and arguments presented, recommends that the motion to dismiss the racketeering count (Count 42) be **DENIED** but that Racketeering Act Two of the Superseding Indictment (SI, ¶¶ 98-106) be **DISMISSED.**

**I. BACKGROUND**

In Count 42 of the Superseding Indictment, the Government charges Defendant Renzi with conducting the affairs of the Renzi and Company/Patriot Insurance ("PI") enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

The Superseding Indictment alleges that Renzi was the principal decision maker for the enterprise, and in conducting the affairs of the enterprise it was his object to engage in an ongoing and continuous fraud scheme in which (1) funds in trust not due and owing to PI were unlawfully withdrawn and disbursed to pay for the expenses of the enterprise, political campaign expenses, and Renzi's personal taxes and campaign expenses; (2) other criminal activity was committed by Renzi to provide funds to the enterprise; and (3) funds that should have been promptly refunded to customers, paid over to carriers, and paid to Spirit Mountain, were kept by Renzi for his own and the enterprise's use and benefit. (SI, ¶ 88.) The Superseding Indictment further alleges that the purposes of the defendant include enriching Renzi through misappropriation of insurance premium moneys paid to PI as fiduciary, preserving and protecting the power and wealth of Renzi using the enterprise as a conduit for other criminally derived proceeds, and concealing Renzi's financial relationship with Defendant Sandlin from Company A, Investment Group B, the United States House of Representatives, and the public. (SI, ¶ 87.)

The racketeering charge is based on allegations of a pattern of racketeering activity consisting of the following predicate acts: 1) the use of insurance premiums held in trust to fund Renzi's first Congressional campaign (Racketeering Act One); 2) a scheme to deprive the United States of "honest services," and to extort constituents (Racketeering Act Two); and 3) misappropriations from Spirit Mountain Insurance Company (Racketeering Act Three). (SI, ¶¶ 85-114.)

Renzi moves to dismiss the RICO charge in the Superseding Indictment because 1) Renzi did not participate in the affairs of the enterprise "through" a pattern of racketeering activity; 2) the Government has failed to allege predicate racketeering acts that constitute a pattern of racketeering activity because the alleged racketeering acts are neither related to

each other nor continuous; and 3) Renzi has filed motions which, if granted, would require dismissal of Racketeering Act Two, and there would be even less continuity between the remaining alleged racketeering acts.

The Government responds, arguing the motion should be denied because Renzi participated in the affairs of his insurance agency through a pattern of racketeering crimes: looting the company for cash when needed, and replenishing its coffers by committing wire fraud and extortion. Additionally, the Government asserts that Renzi's arguments are for the jury, as the RICO charge is sufficient because it 1) tracks the language of the statue; 2) informs the defendant of the charges against him; and 3) enables him to plead an acquittal or conviction in bar of future prosecutions.

**II. DISCUSSION**

A. <u>Motion to Dismiss</u>

The sufficiency of the indictment on a motion to dismiss is tested by its allegations, not facts to be shown at trial. *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 741 (9th Cir. 1954). The allegations, for purposes of considering the motion, must be taken as true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952). The Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Chenaur*, 552 F.2d 294, 301 (9th Cir. 1977) (*citing Hamling v. United States*, 418 U.S. 87, 117-18 (1973)). The statutory language "may be used in the general description of the offense, but it must be accompanied with such a statement of facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.*

"In the Ninth Circuit, '[t]he use of a "bare bones' information - that is one employing the statutory language alone - is quite common and entirely permissible so long as the statute sets forth fully, directly and clearly all essential elements of the crime to be punished.'"

*United States v. Woodruff*, 50 F.3d 673, 676 (9th Cir. 1995) (quoting *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987).

      B.     *Prima Facie* RICO Claim

A *prima facie* RICO case under § 1962(c) requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004)(citations omitted). An "enterprise" is defined to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1962(2).

A "pattern of racketeering activity" requires at least two acts of racketeering activity within ten years of each other. *See* 18 U.S.C. § 1961(5). Predicate acts that may serve as "racketeering activity" include any act 'indictable' under certain enumerated federal criminal statutes, including 18 U.S.C. § 1341, (relating to mail fraud), 18 U.S.C. § 1343, (relating to wire fraud), 18 U.S.C. § 1951 (relating to extortion), 18 U.S.C. § 1952 (relating to racketeering); and 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity). *See* 18 U.S.C. § 1961(1)(B).

An enterprise need not conduct the racketeering activity itself, rather, there must be a "nexus" between the enterprise and the racketeering activity. *United States v. Yarbrough*, 852 F.2d 1522, 1544 (9th Cir. 1988). A person conducts the affairs of an enterprise through a pattern of racketeering activity "when 1) one is able to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or (2) the predicate offenses are related to the activities of that enterprise." *Id., at* 1544 (*citing United States v. Scotto*, 641 F.2d 47, 54 (2nd Cir. 1980)). The racketeering activity must "stem from the enterprise's activities or otherwise have some relationship to the enterprise." *Id*. (citations omitted). This does not require that any benefit accrue to the enterprise because of a particular defendant's racketeering activity, rather, the enterprise is "simply the means or structure through which the racketeering crimes occur." *Id*.

The Supreme Court has held that "RICO both protects a legitimate 'enterprise' from those who would use unlawful acts to victimize it, ... and also protects the public from those

who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful ... activity is committed,' ... A corporate employee who conducts the corporation's affairs through an unlawful RICO 'pattern ... of activity,' § 1962(c), uses that corporation as a 'vehicle' whether he is, or is not, its sole owner." *Cedric Kushner Promotions, Ltd. v. King* 533 US. 158, 164-165 (2001) (citations omitted). RICO liability, however, does depend "on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves v. Ernst & Young*, 507 U.S 170, 185 (1993).

### 1. *Racketeering Act Two*

Renzi asserts that, even if the allegations that Renzi used his position as a Member of Congress to compel two land exchange developers to purchase land and include it in their land exchange proposals were sufficient to charge Hobbs Act violations, they cannot support a RICO charge because Renzi is not alleged to have engaged in acts of extortion "through" PI, the alleged RICO enterprise. Renzi states that the alleged extortion scheme is not "related to the activities of Patriot"; that Acts 2A and 2B do not contain any allegations that Patriot played any role in the extortion, and must be dismissed from the indictment; and that Acts 2C through 2H contain a single reference to Patriot as having controlled the accounts through which the alleged proceeds from the extortion were deposited. Patriot's tangential relationship to the extortion scheme simply does not satisfy RICO's requirement that the defendant participate in the affairs of the enterprise "through" a pattern of racketeering activity.

Because the Government has not alleged that Renzi engaged in extortion "solely by virtue of his position" at PI, and, in fact, has alleged the contrary, Renzi urges this Court to find that the indictment does not satisfy RICO requirements. Renzi further argues that the alleged extortion scheme is not in any way "related to the activities" of PI, and that PI's tangential relationship to the extortion scheme does not satisfy requirements that the defendant participate in the affairs of the enterprise "through" a pattern of racketeering activity.

The Government states that laundering the extortion proceeds was an integral part of the scheme, and the Superseding Indictment alleges that the extortion proceeds were funneled through PI bank accounts. (SI, ¶¶ 89(a), 99.) Further, Racketeering Acts 2C through 2H all allege financial transactions with the proceeds of the extortion using PI bank accounts, and Renzi was able to accomplish all of the above solely by virtue of his control over PI.

Renzi asserts that the Government's argument is spurious because the Government did not charge Renzi with concealment money laundering as a predicate offense, but instead only charged Renzi with having engaged in transaction in criminally derived funds in violation of 18 U.S.C. § 1957. (SI, ¶ 107.)

The Government further states that the extortion was "related to" the affairs of PI - the Superseding Indictment states that "RENZI was having financial difficulty throughout 2005 and needed a substantial infusion of funds to keep his insurance business solvent and to maintain his personal lifestyle." (SI, ¶ 21.) The Government further proffers the following: "The evidence at trial will show that on or about January 13, 2005, Renzi personally executed a Promissory Demand Note based on a substantial debt owed by PI. On May 19, 2005, Renzi deposited $200k of extortion proceeds into a PI account. Renzi partially paid the PDN owed by PI with a $170k wire transfer on May 31, 2005. The evidence will thus establish one motivation for the extortion, and further prove that the extortion proceeds helped PI pay this substantial business debt. This is more than sufficient to establish that the extortion is 'related to' the affairs of the enterprise."

Renzi responds that the Government does not specify in the Superseding Indictment which payments to PI were allegedly used to keep PI solvent, or which payments to PI were, under the Government's alternative theory, made to launder the extortion proceeds. Instead, as the Court has recognized, the Superseding Indictment alleges that a series of payments were simply funneled through PI. The Government points only to a single paragraph in the Superseding Indictment to support its argument that Renzi's motive for extortion was to keep PI solvent. (SI, ¶ 21.) At most, however, ¶ 21 contains an allegation that after the extortion scheme was completed, PI's insolvency provided a partial motive to conceal some of the

proceeds of the scheme. Second, ¶ 21 is directly contradicted by ¶ 104.

Defendant Renzi makes no contention that the first and third predicate acts are not sufficiently related to the activities of the enterprise, PI, for purposes of establishing a sufficient nexus between the predicate acts and the enterprise in the indictment. Solely at issue then, is the nexus between the second predicate act, the extortion scheme and honest services wire fraud, and the enterprise. In considering the "nexus" requirement , the Ninth Circuit has described the enterprise as "simply the means or structure through which the racketeering crimes occur." *Yarbrough*, 852 F.2d at 1544.

The Superseding Indictment alleges that Renzi engaged in extortion by virtue of his position as a United States Representative. Predicate Acts 2A and 2B of the Superseding Indictment do no allege a direct or indirect involvement between the racketeering acts and the enterprise, PI. They are solely the actions of Defendant Renzi acting on his own behalf. While the Government may argue that the "motivation" for committing the extortion was related to the enterprise, the relationship between the act itself, not simply the motivation for performing the act, and the enterprise is too tenuous to support a RICO charge. It is clear to the Court that Racketeering Act Two, as alleged, is a demonstration of Defendant Renzi conducting his own affairs by means of extortion and fraud, and not the affairs of the enterprise, nor was he conducting his own affairs "through" the enterprise. *See Reves*, 507 U.S. at 185. Therefore, the Magistrate Judge recommends that Racketeering Act Two be dismissed from the Superseding Indictment as lacking sufficient nexus to the enterprise.

2.   *Pattern*

Proof of a pattern of racketeering requires proof of two or more racketeering acts. *Sedima, S.P.R.L. v. Imrex Co. Inc.*, 473 U.S. 479 (1985). Although two predicate acts are necessary, they are not necessarily sufficient, to prove a violation of § 1962(c): the pattern element also requires proof of "relatedness" and "continuity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239-41 (1989); *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir.2004). The Supreme Court, noting that Congress had "done nothing ... to illuminate RICO's key requirement of a pattern of racketeering," rejected suggestions that a pattern is established

merely by proving two predicate acts. *H.J. Inc.*, 492 U.S. at 236. The Court observed that sporadic activity or widely separated and isolated criminal offenses would not form a pattern. *H.J. Inc.*, 492 U.S. 239. "[T]he term 'pattern' itself requires the showing of a relationship between the predicates and of the threat of continuing activity." *See H.J., Inc.*, 492 U.S. at 238 (internal citation and quotation marks omitted); *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000).

The Government asserts that the definition of pattern of racketeering activity in 1961(5) is the minimum necessary condition for the existence of such a pattern. "[T]o prove a pattern of racketeering activity, a plaintiff or prosecutor must show that the racketeering predicates are related, and that they amount to or pose a threat of continued activity." *H.J. Inc.*, 492 U.S. at 232, *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992); *Ikuno v. Yip*, 912 F.2d 306 (9th Cir. 1990).

Although an allegation of two isolated criminal acts is insufficient to satisfy the relatedness requirement, *H.J. Inc.*, 491 U.S. at 239; the predicate offenses are related if they have the same or similar purposes, results, participant, victims or methods of commission, and are not isolated events. *Id.* at 240; *Religious Technology Center*, 971 F.2d 364, 366 (9th Cir. 1992).

"'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *H.J. Inc.*, 492 U.S. at 241 (*citing Barticheck v. Fidelity Uniton Bank/First National State*, 832 F.2d 36, 39 (3rd Cir. 1987). To prove "close-ended continuity" the government must show that the alleged racketeering did not consist of "isolated criminal acts." *Religious Technology Center*, 971 F.2d at 366.

The Government asserts that the Superseding Indictment alleges that Racketeering Acts One and Three were simply particulars of an overall pattern of Renzi robbing PI whenever he needed cash, commencing no later than 2001, and continuing through at least 2007. The evidence at trial will be more than sufficient to establish that Renzi regularly took from PI and could be expected to continue that practice.

Relying on *Turner v. Cook*, 362 F.3d 1219, 1231 (9th Cir. 2004), Renzi asserts that two isolated predicate acts with several years separating their commission cannot be relied on to prove continuity. Renzi argues that nowhere in the Superseding Indictment is any allegation made that the predicate racketeering acts carry a threat of continued criminal activity.

Because this Court has recommended that Racketeering Act Two be dismissed from the Superseding Indictment, and because this Court has previously held that "the land exchange offenses and insurance fraud offenses are not related in time, place, or manner" the only question before the Court is whether Racketeering Acts One and Three establish a pattern of racketeering activity sufficient to survive this motion to dismiss.

Renzi asserts that the only the only common participant to all three alleged predicate acts is Renzi, but "merely having the same participants is insufficient to establish relatedness." *Howard v. America Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). The predicate acts, however, had much more in common than Defendant Renzi. Both insurance fraud schemes alleged in Racketeering Acts One and Three had the same or similar purposes - to enrich Defendant Renzi by diverting insurance premium funds which were not the property of Renzi, and to conceal the misappropriation (Act One: SI ¶¶ 93-94) and to embezzle and misappropriate client premiums to pay [Renzi's] substantial personal expenses (Act Three: SI ¶¶ 110-111); both had similar results - movement of insurance premiums held in trust through numerous accounts to either: Act One: Rick Renzi for Congress campaign account (SI ¶ 63); or Act Three: to Renzi's personal accounts (SI ¶ 71), and both had similar methods of commission - the issuance of letters and payments through interstate mailings to conceal the misappropriations (Act One: SI ¶ 97; Act Three: SI ¶¶112-114). Acts One and Three therefore satisfy the "relatedness" requirement.

Renzi's own motion establishes that predicate acts one and three lasted at least 12 months and 14 months over a 7-year period. Contrary to Renzi's assertion's, however, this is not a "short span of time," and is more than sufficient to establish the "close-ended continuity" requirement. This establishes that over the period in consideration, the

1 allegations are that approximately one-third of the time Renzi conducted PI's business in a
2 criminal manner; certainly, short of running an entirely criminal enterprise, it would be hard
3 to envision a more "regular way of conducting" PI's business.

Accordingly,

It is the recommendation of this Court that the District Judge, after his independent review and consideration, enter an Order **DENYING** Defendant RENZI's Motion to Dismiss Racketeering Count (Doc. No. 261) and **DISMISSING** Racketeering Act Two (Superseding Indictment, ¶¶ 98-106).

Pursuant to 28 U.S.C. §636(b)(1)(C), the parties have ten (10) days from the date of this Report and Recommendation to file written objections to these findings and recommendations with the District Court. **Any objections filed should be filed as CR 08-00212-TUC-DCB.**

DATED this 21st day of September, 2009.

_____
Bernardo P. Velasco
United States Magistrate Judge