WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | |
|       Plaintiff, ) | |
| v. ) | CR 08-212 TUC DCB (BPV) |
| ) | **O R D E R** |
| Richard G. Renzi, James W. Sandlin, Andrew ) Beardall, Dwayne Lequire, ) | |
|       Defendant, ) | |

This matter having been referred to Magistrate Judge Bernardo P. Velasco, he issued an Order on February 13, 2009, pursuant to 28 U.S.C. § 636(b)(1)(A). (Order: document 303). Magistrate Judge Velasco denied Defendant Renzi's Motion for a *Kastigar* Hearing and to Disqualify the Prosecution Team. Magistrate Judge Velasco held that a *Kastigar* hearing does not apply to the alleged Speech or Debate Clause violations before the Court. He explained that the Speech or Debate Clause privilege is one of use, <u>not</u> non-disclosure. Under the Speech or Debate Clause, any requisite hearing will be to determine whether any charged conduct must be dismissed, whether the Superceding Indictment must be dismissed, and whether to preclude use of privileged evidence at trial. There is no derivative use immunity under the Speech or Debate Clause, consequently, this is not a basis to disqualify the prosecution.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Crim. P. 59, the parties had ten days from the filing date of the Magistrate Judge's Order to file written objections with this Court. Failure to object waives a party's right to review. Fed. R. Crim. P. 59(a). The Court reviews *de novo* all questions presented by the parties in their objections. The Court may reconsider such matters where it is shown that the Magistrate Judge's Order is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A).

Defendant Renzi filed an objection. The Government did not respond. The Government did not file any objection.

Defendant argues that Judge Velasco committed error when he failed to find that the protections afforded by the Speech or Debate Clause are "much stronger" than the Fifth Amendment privilege against self-incrimination and refused to apply the same procedural safeguards here as it would in the event the prosecution team had violated Defendant's Fifth Amendment rights. Defendant argues it was error for Judge Velasco to find that the Government does not bear the "heavy burden" of proving in a *Kastigar* hearing that it has not used protected material it obtained in violation of the Speech or Debate Clause in its investigation and prosecution of Congressman Renzi. In the event the Government fails to meet its burden at a *Kastigar* hearing, the Superseding Indictment must be dismissed, and even if the Government's case survives the hearing, the prosecution team must be disqualified based on its exposure to material protected by the Speech or Debate Clause. Defendant argues that these remedies are necessary to ensure the Government makes no further use of the protected material and to vindicate the Defendant for the Government's violation of the Speech or Debate Clause.

Defendant argues that Judge Velasco erred by adopting the reasoning of *In re Grand Jury Proceedings*, *(Eilberg)*, 587 F.2d 589 (3rd Cir. 1978), and rejecting *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007), and failing to discuss *Miller v. Transamerican Press, Inc.,* 709 F.2d 524 (9th Cir. 1983), a controlling decision. Defendant argues that a hearing must be held pursuant to *Kastigar* to determine if the Government can establish that the evidence it proposes to use in this case is neither privileged nor derived from privileged information. Instead, Judge Velasco followed *United States v. Swindall*, 971 F.2d 1531 (11th Cir. 1992), and found that the Court need only determine whether the Superceding Indictment or any charges in it must be dismissed because they are based on evidence protected by the Speech or Debate Clause.

In *Kastigar,* the Supreme Court considered the Fifth Amendment right against self-incrimination and concluded that before a person may be compelled to testify against himself in violation of the Fifth Amendment privilege, he must be granted immunity from the use of the

compelled testimony and any evidence derived directly and indirectly therefrom, but need not be granted transactional immunity for offenses related to the compelled testimony. *Kastigar v. United States*, 406 U.S.C §§ 441, 453-54 (1972). In other words, there is no absolute prosecutorial immunity for any offense related to the compelled testimony, but the Government must establish independent evidentiary support for any future prosecution free from the taint of the compelled testimony. In this way, the person who has been compelled to self-incriminate himself is put in the same position he would have been in had he exercised the privilege. The Government is without use of the compelled direct testimony and is derivatively barred from using the compelled testimony as an investigatory lead. *Id.* at 460. Consequently, the immunity protects the privilege. A person compelled to give testimony against himself is entitled to a *Kastigar* hearing in any subsequent prosecution and the Government must affirmatively establish a legitimate source for the prosecution wholly independent of the compelled testimony.

Defendant argues that this same immunity, both direct and derivative, is necessary to protect the legislative privilege under the Speech or Debate Clause, which provides that "for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place." United States Const. AR. 1, § 6. The founding fathers adopted the Speech or Debate Clause to protect the integrity and independence of the legislature from the instigation of criminal charges against critical or disfavored legislators by the executive in a hostile judicial forum and to reinforce the separation of powers. *United States v. Johnson*, 383 U.C. 169, 178-180, 182 (1966). The purpose of the Speech or Debate Clause is to protect an independent legislative process free from Executive Branch interference. *Id.*

In *Johnson*, the Court reversed the conviction of a Congressman for conspiring to defraud the government, whereby the Congressman's part in the conspiracy included among other things making a speech on the House floor urging support for a financial institution under investigation by the Department of Justice. The government alleged that the Congressman made the speech in exchange for a bribe in the guise of a campaign contribution. The Court held the prosecution of the Congressman had depended on an inquiry into his legislative acts

on the floor of the House and his motives for performing them, which contravened the Speech or Debate Clause. *Id.* at 185. Whereas the court of appeals had dismissed the conspiracy count, the Supreme Court explained that the prohibited evidence was only a part of the conspiracy charge, therefore, the government should not be precluded from a new trial with all reference to the evidence offensive to the Speech or Debate Clause eliminated. *Id.*

Judge Velasco was correct when he rejected the Defendant's argument that the Speech or Debate Clause is "'analogous to but much stronger than the Fifth Amendment privilege against self-incrimination.'" (Order filed 2/13/09 (Doc. 303) at 3 (citing Motion for *Kastigar* Hearing (Doc. 92) at 8)). Judge Velasco was correct when he found the privilege under the Speech or Debate Clause to be different from the Fifth Amendment privilege against self-incrimination. *Id.*

The Speech or Debate Clause does not protect a Congressman from prosecution for nonlegislative acts such as taking a bribe or soliciting a bribe in return for being influenced in the performance of official duties. *United States v. Brewster*, 408 U.S. 501 (1972). In *Brewster*, a Congressman, who was a member of the Senate Committee on Post Office and Civil Service, was indicted for soliciting and taking bribes in exchange for promising to vote a certain way on postage rate legislation. The lower courts had dismissed the indictment as a violation of the Speech or Debate Clause. The Supreme Court explained the lower courts applied the narrow holding in *Johnson* too broadly. *Id.* at 510. According to the Supreme Court, *Johnson* "stands as a unanimous holding that a Member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts." *Id.* at 512. The Court rejected the notion that the Speech or Debate Clause privilege for legislative acts could ever reach illicit conduct performed outside the House, *id.* at 514, and that extending the privilege to include all things in any way related to the legislative process would sweep away the purpose of the privilege which is to protect the independence and integrity of the Legislative Branch by encouraging abuses such as vote selling, *id.* at 514-517. The Court noted that the founding fathers drafted the Speech or Debate Clause to guard against pressure being exerted on the Parliament by the Executive and a hostile

Judiciary, but also to guard against abuses found in the English Parliament where votes became a source of income for unscrupulous members. *Id.* at 517. The Speech or Debate Clause strikes a delicate balance between the two by stopping short of creating super-citizens, immune from criminal responsibility. *Id.* at 516. The Court held the shield of immunity need not extend beyond what is necessary to preserve the integrity of the legislative process. *Id.* at 516-517. The Supreme Court held that the scope of the privilege extends to legislative acts or motivation for legislative acts. *Id.* at 525.

The Government may proceed against a Congressman as long as it can make a prima facie case without using evidence of his legislative acts or his motivation for his legislative acts. *Id., cf., United States v. Helstoski*, 442 U.S. 477 (1979) (affirming lower court's denial of motion to dismiss indictment allowing case to go forward; recognizing that exclusion of evidence of past legislative acts will make prosecution more difficult).

Magistrate Judge Velasco correctly held that the privilege is one of use, not non-disclosure. The privilege is protected by the dismissal of an indictment or any charges brought against a Congressman which are dependent on privileged evidence and by requiring preclusion of any privileged evidence. Accordingly, the Government relies upon privileged evidence at its own peril.

This is in keeping with the Supreme Court's holding in *Helstoski v. Meanor*, 442 U.S. 500, 506-07 (1979), that in the absence of an interlocutory appeal from a district court's refusal to dismiss an indictment, the protections of the Speech or Debate Clause would be lost because the Clause is designed to protect Congressmen not only from the consequences of litigation's results but also from the burdens of defending themselves. The privilege does not extend to being free from investigation into criminal conduct.

The cases relied on by Defendant do not support his assertion that a *Kastigar* hearing is necessary or that the prosecution team must be disqualified to remedy the alleged violations of the Speech or Debate Clause. In *United States v. Rayburn House Office Building*, 497 F.3d 654 (D.C. Cir. 2007), the court dealt with the unusual situation where the Department of Justice executed a search warrant on a Congressman's congressional office. The search warrant was

limited to non-legislative materials, but when executed some privileged materials were necessarily captured by the search and subject to review by a filter team that screened the material without exposing it to the executive branch prosecutors. *Id.* at 657. The court held that under *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 420 (D.C. Cir. 1995), the Speech or Debate Clause extends to non-disclosure of written legislative materials. The court held that "the compelled disclosure of privileged material to the Executive during execution of the search warrant for Rayburn House Office Building Room 2113 violated the Speech or Debate Clause and that the Congressman [was] entitled to the return of documents that the court determined to be privileged under the Clause." *Rayburn*, 497 F.3d at 657.

The *Rayburn* case was before the court on a Rule 41(g) Motion for Return of Property unlawfully seized pursuant to a search warrant. The Congressman asked for the return of all documents. He argued even nonprivileged documents be returned to deter the Executive from violating the Speech or Debate Clause in the future. *Rayburn* is an example of hard cases making bad law. While the court stopped short of issuing the judgment sought by the Congressman, it nevertheless chastised the Executive for executing a search warrant on Congressional offices, a bastion of privileged material. It appeared indisputable that search of such a forum would by necessity compel the disclosure of privileged material to the Executive, albeit unintentionally. The court opined that under the Speech or Debate Clause the Congressman must be present at the execution of the warrant and given the opportunity in the first instance to assert the privilege, with the Judiciary to decide any dispute before disclosure to the Executive. *Id.* at 662.

This Court agrees with Judge Henderson, who concurred in the judgment for return of the privileged property but wrote separately to express her concern over the dicta expressed by the majority that any nondisclosure privilege recognized under the Speech or Debate Clause could extend to prevent execution of a search warrant. She correctly noted that under Supreme Court precedent "the Clause 'does not purport to confer a general exemption upon Members of Congress from liability or process in criminal cases. Quite the contrary is true.'" *Id.* at 666 (citing *Gravel v. United States*, 408 U.S. 606, 626 (1972)). She noted that the sole basis for the

majority's opinion rested on *Brown & Williamson Tobacco Corp. v. Williams*, a challenge to a civil subpoena obtained by private parties seeking documents in the possession of a congressional subcommittee. In *Brown & Williamson*, the nondisclosure privilege attached because the court found the documents were being used in the normal course of legislative activity. This is of course the threshold question in a Speech or Debate Clause case, whether it be civil or criminal. As Judge Henderson noted, Congressman Jefferson had foregone his opportunity to raise his arguments of privilege because he had ignored a subpoena duces tecum, by which the government had first attempted to secure the documents. *Rayburn*, 497 F.3d at 669 n. 7.

Judge Henderson found, and this Court agrees, that the Speech or Debate Clause does not shield against *any and all* Executive Branch exposure to records of legislative acts because this would jeopardize law enforcement tools that have never been considered problematic. *Id.* at 671-72. This Court also agrees that *Rayburn*, carried to its logical conclusion, would require advance notice of any search of a Congressman's property, including property outside his congressional office, such as his home or car, and that he be allowed to remove any material he deems to be covered by the legislative privilege prior to a search. If mere exposure by the Executive Branch violates the privilege agents could not conduct voluntary interviews of congressional staffers, who wish to expose criminal acts involving legislative activities or conduct surveillance of a Member or staffer who might discuss legislative matters with another Member or staffer. *Id.* at 672.

These are some of the challenges the Defendant makes in this case. This Court agrees with Judge Henderson that there is no Supreme Court precedent to suggest the Speech or Debate Clause applies to limit the Executive Branch's power to *investigate* criminal conduct. The law is to the contrary. The scope of the privilege has been limited even in the most protected forum, on the very floor of the House, to one of use. Since *Brewster*, this has been the balance struck to ensure an independent legislature, free from intimidation by Executive Branch, but careful not to create super-citizens, immune from criminal responsibility and

- 7 -

susceptible to corruption. There is just as much reason to avoid creating *per se* safe-havens, such as congressional offices, that are free from criminal investigative searches.

The Defendant complains that Magistrate Judge Velasco failed to recognize Ninth Circuit precedent, *Miller v. Transamerican Press, Inc.*, 709 f.2d 524, (9th Cir. 1983), which requires this Court to follow the majority reasoning in *Rayburn.* This Court has considered *Miller* and finds it does not support the majority opinion in *Rayburn*.

In *Miller*, the court quashed a subpoena to compel a former Congressman's testimony in a civil case seeking discovery related to an article inserted in the public record that suggested misappropriation of pension funds. The court rejected the plaintiff's argument that the ex-Congressman should be forced to testify because the purpose of the privilege was to forestall retaliatory criminal charges against a legislator, which was not a concern in respect to a former legislator no longer holding office. Noting that the privilege applies in civil cases to prevent distraction from legislative duties, obstruction of ongoing legislative activity, or the burden of defense from civil liability, *id.* (citing *Eastland v. United Sates Servicemen's Fund*, 421 U.S. 491 503 (1975), and that these rationales do not apply to someone not actually serving in the legislature, the Court held the privilege nevertheless applied. The court based its holding on the purpose of the privilege more commonly referred to in criminal proceedings: to protect the freedom of speech in the legislative forum. *Id.* at 528-29. The Court found that the evidence sought by the subpoena was a protected legislative act. Once the privilege attaches it is absolute, therefore, the ex-Congressman's testimony about the legislative act of inserting the article into the Congressional record and his motives for doing so was precluded and the court quashed the subpoena. *Id.* at 529-53. The court in *Miller* followed *Brewster*, which is the law this Court intends to follow.

/////
/////
/////
/////
/////

1 | The Court finds that Magistrate Judge Velasco's Order is neither erroneous nor contrary
2 | to the law.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record in respect to the Defendant's objections, the Magistrate Judge's Order (document 303) is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that Defendant's Motion for a *Kastigar* Hearing or to Disqualify the Prosecution Team (document 92) is DENIED.

**IT IS FURTHER ORDERED** that this matter remains referred to Magistrate Judge Bernardo P. Velasco for all pretrial proceedings and Report and Recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LR Civ. 72.1(a), Rules of Practice for the United States District Court, District of Arizona (Local Rules).

DATED this 17th day of February, 2010.

David C. Bury
United States District Judge