WO

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | ) |
| Plaintiff, | ) |
| | ) CR 08-212 TUC DCB (BPV) |
| v. | ) |
| | ) **O R D E R** |
| Richard G. Renzi, James W. Sandlin, Andrew Beardall, Dwayne Lequire, | ) |
| Defendant, | ) |

This matter having been referred to Magistrate Judge Bernardo P. Velasco, he issued a Report and Recommendation (R&R) on June 16, 2009, pursuant to 28 U.S.C. § 636(b)(1)(A). (R&R: doc. 387). Magistrate Judge Velasco recommends that the Court deny Defendant Renzi's motions[1] to dismiss the Indictment[2] for Speech or Debate Clause violations.

Defendant Renzi made two arguments for dismissal of the Indictment, as follows: 1) The Government's charges against Renzi are based on legislative acts, and the Government must necessarily introduce evidence of legislative acts to prove its case at trial, and 2) Speech or Debate Clause violations were made before the Grand Jury.

Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1) provides that the district court may "accept, reject, or modify, in whole or in part, the findings or

---

[1] Pending motions are: Motion to Dismiss the Indictment (doc. 86), Motion to Dismiss the Superseding Indictment for violations in the grand jury (doc. 264), and Motion to Dismiss the Superseding Indictment for violations in the grand jury (doc. 327). Defendant Sandlin filed a Motion to Join in Renzi's Motion to Dismiss the Superseding Indictment (doc. 327), but failed to file a supporting memorandum and has not entered any objection to the R&R.

[2] Now, the Second Superseding Indictment.

recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1). If the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are made, the district court need not review the R&R *de novo. Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir.2003) (en banc).

After a full and independent review of the record and the Defendant's objections, the Magistrate Judge's R&R is accepted and adopted as the findings of fact and conclusions of law of this Court.[3] The Defendant's motions to dismiss the Indictment are denied. The Court rejects Defendant's objections, which are as follows.

Defendant Renzi charges that Magistrate Judge Velasco "creat[ed] a novel Speech or Debate Clause test, which conflicts with controlling Ninth Circuit precedent. He argues the Magistrate Judge erred in finding his dealings with land exchange proponents were not legislative fact-finding, protected by the Speech or Debate Clause. He further argues that Judge Velasco erred as follows: he wrongly concluded that charges Congressman Renzi acted illegally or with criminal intent did not strip him of his Speech or Debate protections; he erred in finding the Speech or Debate Clause was not violated by allegations that Congressman Renzi's motive to ask land proponents to include the Sandlin property in their land exchange legislation was to enrich Sandlin and benefit himself, and he erred in holding that Speech or Debate material before the Grand Jury did not violate the Speech or Debate Clause because the Indictment did not rely or depend on it.

The Court rejects Defendant Renzi's notion that Judge Velasco created a "novel" Speech or Debate Clause test. Judge Velasco provided a detailed and thorough assessment of the history and construction of the Speech or Debate Clause privilege, which this Court relies on and finds no need to repeat here. It is undisputed the express language of the Speech or Debate

---

[3]Unless different from the Magistrate Judge's findings of fact, the Court relies on the citation of the record contained in the R & R. The Court equally relies on the law as properly stated by the Magistrate Judge.

- 2 -

Clause protects "any Speech or Debate in either House." (R&R at 6 (citing U.S. Const. Art. I, § 6, cl.1.)). It is undisputed that the challenged allegations did not involve speech or debate in either House. The question before Judge Velasco and this Court is the breadth of protection afforded by the Speech or Debate Clause to acts that are not taken in either House. Within this context, Magistrate Judge Velasco relied on the same law relied on by Defendant Renzi, *United States v. Gravel*, 408 U.S. 606 (1972).

"[I]n addressing the scope of the Clause, the Court in *Gravel* explained [within the context of] '[m]embers of Congress [being] constantly in touch with the Executive Branch of the Government and with administrative agencies - - they may cajole, and exhort with respect to the administration of a federal statute - - but such conduct, though generally done, is not *protected* legislative activity.'" (R&R at 10 (citing *Gravel*, 408 U.S. at 625)) (emphasis added).

> Legislative acts are not all-encompassing. The heart of the Clause is speech or debate in either House. Insofar as the Clause is construed to reach other matters, they must be an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction of either House. As the Court of Appeals put it, the courts have extended the privilege to matters beyond *pure* speech or debate in either House, but 'only when necessary to prevent indirect impairment of such deliberation.

*Id.* (emphasis added). Neither does the Clause provide a privilege to "'violate an otherwise valid criminal law in preparing for or implementing legislative acts.'" *Id.*

Judge Velasco used the two-part test formulated in *Miller v. Transamerican Press*, 709 F.2d 524, 529 (9th Cir. 1983), for assessing whether activity other than that made in either House, i.e., "pure" speech or debate, qualifies for the privilege. (R&R at 12.) "First, it must be 'an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings.'" *Id.* "Second, 'the activity must address proposed legislation or some other subject within Congress' constitutional jurisdiction.'" *Id.*

There is no novelty in the law nor the test applied by Magistrate Judge Velasco to assess whether or not the Speech or Debate Clause privilege applies to Defendant Renzi's negotiations with land exchange proponents, which even if characterized as investigative fact-finding, were admittedly not done in either House or before any Congressional committee, and not done

pursuant to any directive from Congress or a congressional committee. Judge Velasco described the former as "pure speech" and the latter as "formal" investigations. Defendant Renzi takes exception to both adjectives, but Judge Velasco necessarily used these terms to describe what is <u>not</u> at issue in this case.

With that said, the Court turns its attention to what is at issue in this case: whether Renzi's alleged legislative acts are the type protected by the Speech or Debate Clause. Like Magistrate Judge Velasco, the Court applies the two part test suggested in *Miller*: 1) were the land exchange negotiations an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings, and 2) did the negotiations address proposed legislation or some other subject within Congress' jurisdiction? This case involves congressional jurisdiction over land exchange legislation. Accordingly the Court looks to legislative acts that are taken within the context of Congress' jurisdiction to act on proposed legislation, involving the deliberative and communicative process by which Members participate in committee and House proceedings.

The Court has carefully considered Renzi's argument that in the land exchange context, "'directing a private land holder to include property in an exchange in return for a congressman's support for the legislation is a routine, manifestly legislative act akin to negotiating an amendment to draft legislation.'" (R&R at 19 (citing Motion to Dismiss Indictment (doc. 86) at 36)).

Here, Defendant Renzi asserts that every communication he had regarding the land exchange proposals qualifies for protection under the Speech or Debate Clause because they were all investigatory fact-finding legislative acts. In this case, private citizens contacted Defendant Renzi with land exchange proposals that were necessary components to their private ventures. "A federal public land exchange is a real estate transaction in which a property owner exchanges its privately owned land for federal public land. Before an exchange occurs, the federal parcel and the non-federal land must be appraised to ensure that they are of equal value, the exchange must comply with the national Environmental Protection Act, and must serve the public interest." (R&R at 3.) Alternatively, private land owners may pursue a legislated land

exchange, which is not subject to these three requirements, and they are therefore less cumbersome than administrative exchanges. *Id.* at n. 3 (citing *Amicus Curiae* of Bipartisan . . . of the U.S. House of Representatives (doc. 198) at 10)).

Even if the land exchange negotiations are described as fact-finding investigative acts generally performed by Congressmen in their official capacities, this "does not necessarily make all such acts legislative in nature" for purposes of applying the Speech or Debate Clause. (R&R at 27 (citing Gravel, 408 U.S. at 625)). The Magistrate Judge correctly drew the line. The Speech or Debate Clause does not protect negotiations between Renzi and the private citizens proposing the land exchange deals that were not an integral part of any deliberative and communicative process by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed land exchange legislation. Conversely, after the introduction of the land exchange legislation, negotiations with land exchange proponents, investigations and fact finding conducted for the purposes of preparing for hearings or amending the legislation or preparing speeches, or preparing to vote, etc., will clearly be protected. (R&R at 22.) Like the Magistrate Judge, this Court wants to make clear that it does not find that "the Speech or Debate Clause does not apply until legislation is introduced in Congress." *Id.*

It does not matter how the communications are characterized, whether formal or informal legislative investigation and fact-finding, the Speech or Debate Clause applies only to communications between Congressmen and land exchange proponents if they can be said to be *an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings addressing the land exchange legislation at issue here.*

I. Renzi moves to dismiss the Indictment because it contains three types of allegations that violate the Speech or Debate Clause: 1) what Renzi said to proponents of land exchange legislation; 2) references to and descriptions of meetings he had with land exchange proponents, and 3) quotes from his correspondence referring to land exchange legislation.

Like the Magistrate Judge, this Court limits its review to only the issue of whether or not the government based the charges in the Indictment on Congressman Renzi's protected legislative acts and whether the government must necessarily introduce evidence of protected

legislative acts to prove its case at trial. Specifically, in the context of this discussion, the phrase "legislative acts" is used to describe *only legislative acts protected by the Speech or Debate Clause*. The Court finds that the Government may establish its allegations with proof involving promises by Renzi to support and vote for the proposed land swap legislation. The Court also finds that the Government may establish the allegations in the Indictment, including those of improper motive, with proof of promises to solicit other votes for the respective land swap proposals in return for the purchase of the Sandlin property. Such promises are promises to perform future legislative acts, and as such are not protected. (R&R at 18, 27 (citing *United States v. Helstoski*, 442 U.S. 477, 489, 490 (1979)) (explaining "[l]ikewise, a promise to introduce [and/or sponsor] a bill is not a legislative act."); *United States v. Brewster*, 408 U.S. 501, 526, 27 (distinguishing prosecution of a Member of Congress under a criminal statue as long as the case does not rely on legislative acts or the motivation for legislative acts); *United States v. Myers*, 635 F.2d 932, 941-42 (2nd Cir. 1980 (finding "[s]ince the indictment alleges a promise to perform a legislative act and not the performance of the act, there is no reason to assume that at trial the Government will be unable to abide by the constitutional restriction upon its evidence."); *see also United States v. McDade*, 28 F.3d 283, 293 (3rd 1994) (Alito, J. (explaining "the Clause prohibits only proof that a member actually performed a legislative act" in the past)).

"'In no case has [the Supreme] Court ever treated the Clause as protecting all conduct relating to the legislative process.'" (R&R at 15 (citing *Brewster*, 408 U.S. at 515-16)). This is what the Defendant urges this Court to do, and which this Court cannot do in light of clear Supreme Court precedent to the contrary. Nor, may this Court apply the privilege to conduct that violates an otherwise valid criminal law in preparing for or implementing protected legislative acts. *Id.* at 9 (citing *Brewster*, 408 U.S. at 526-27)).

In the District of Columbia Circuit's recent decision *In re Grand Jury Subpoenas*, 571 F.3d 1200 (D.C. Cir. 2009), a member of Congress objected to the government's subpoena of his responses to a House Ethics Committee investigation into whether he was engaged in legislative fact-finding during a privately funded overseas trip. The court rejected the

government's argument that the responses were not protected because the investigation involved the member's personal financial transactions and private conduct as opposed to the business of the House. The court found the investigation before the Ethics Committee was whether the member abused his official powers, specifically, his power to conduct legislative fact-finding. Consequently, the member's responses before the Congressional Ethics Committee were covered by the Speech or Debate Clause. Defendant Renzi argues that this Court should follow the D.C. Circuit in recognizing legislative fact-finding as protected by the Speech or Debate Clause.

This Court, however, does not find Renzi's position supported by *In re Grand Jury Subpoenas*. Instead, the D.C. Circuit distinguished between investigations before the Ethics Committee into private conduct such as a failure to make financial disclosures and investigations into the exercise of official powers. The D.C. Circuit found that even in the setting of a formal investigation by a Senate committee, the former is not protected, *see United States v. Rose*, 28 F.3d 181 (1994), but the latter is protected, *see Ray v. Proxmire*, 581 F.2d 998 (1978). The concurring opinion in *In re Grand Jury Subpoenas*, criticized the majority decision because under *Gravel*, "[a] Member's statement to a congressional ethics committee is speech in an official congressional proceeding and thus falls within the protection of the Clause." *Id.* at 1204, Kavanaugh (concurring, but for different reasons). Even in this most protected forum, the majority would withhold the privilege, where the inquiry involved only the private conduct of the congressman. *In re Grand Jury Subpoenas* does not help Defendant Renzi. As argued by the dissent, "the *Rose/Ray* test does not accord with the text of the Speech or Debate Clause and Supreme Court precedents." *Id.* Arguably, *In re Grand Jury Subpoenas* suggests an erosion of the privilege.

This Court has no intention in straying from Supreme Court precedent in respect to the Speech or Debate Clause, which has closely tracked the delicate balance struck by the Clause. The purpose of the Clause is "to protect the individual legislator, not simply for his own sake, but to preserve the independence and thereby the integrity of the legislative process." (R&R at 6-7 (citing *Brewster*, 408 U.S. at 525)).

Unlike many of our constitutional privileges which safeguard our individual rights and personal liberties, the "'Speech or Debate Clause was designed neither to assure fair trials nor to avoid coercion.'" (R&R at 6 (citing *Helstoski*, 442 U.S. at 490). The Clause provides a delicate balance to preserve an independent legislature, free from possible prosecution by an unfriendly executive and conviction by a hostile judiciary, without creating a super-citizen, immune from criminal liability and free to take bribes and act criminally with impunity. Tipping the scale either way will undermine legislative integrity and defeat the right of the public to honest representation. *Id.* (citing *Brewster*, 408 U.S. at 508). So while the legislative privilege must be read broadly to effectuate its purpose, it must not be read so as to strip the executive branch of its power to investigate and prosecute the judiciary for taking bribes or conducting other criminal affairs. *Id.* at 7 (citing *United States v. Johnson*, 383 U.S. 169, 180 (1966); *Brewster*, 408 U.S. at 525)). Defendant Renzi's proposed definition of a legislative act protected by the Speech or Debate Clause does precisely what *Brewster* prohibits and ignores the Supreme Court precedent for application of the Clause.

In keeping with Supreme Court precedent, this Court finds that unless fact-finding occurs in the House or congressional committee, it must be an integral part of the deliberative and communicative process by which Members participate in committee and House proceedings addressing legislation put before it or some other similar subject. The Court agrees with Magistrate Judge Velasco, Defendant Renzi cannot make this showing for the three types of allegations in the Indictment that he charges violate the Speech or Debate Clause: 1) what he said to land proponents; 2) references to and descriptions of meetings he had with land exchange proponents, and 3) quotes from his correspondence referring to land exchange legislation proposed by these proponents.

In summary, it is not enough that a private constituent comes to a member of congress with proposed legislation or to discuss proposed legislation, or to ask the congressman or woman for support of certain legislation. This would sweep *Brewster* and other Supreme Court precedent away, and there would be no need to distinguish between a promise of a future legislative act and a legislative act. Only the latter being privileged under the Speech or Debate

Clause. If Supreme Court precedent means anything, it must mean that legislative acts protected by the Speech or Debate Clause occur subsequent to such meetings and discussions. The privilege arises when in fact the congressman acts to promote, support and pass the land exchange legislation in either House or undertakes an act that is an integral part of such an endeavor. Furthermore, there is a distinction between a legislative act and a criminal act or an act taken solely for personal aggrandizement. Only the former is privileged, not the latter. The motive behind a legislative act is also privileged, but evidence of motive, strategy, and purpose of conduct not protected by the Speech or Debate Clause is not privileged. If evidence requires an inference of a protected legislative act, it is privileged. If an inference may be drawn that will not violate the Speech or Debate Clause, evidence is not privileged for this permissible purpose, but is otherwise privileged. These were the conclusions of law recommended by Magistrate Judge Velasco,[4] which this Court affirms and applies to these motions and all the Speech or Debate Clause motions presented by Defendant Renzi. *See i.e.,* (R&R on Motion to Suppress Wiretap and Warrant and Evidence (doc. 458) and this Court's corresponding Order.)

/////

/////

/////

---

[4]Defendant misconstrues the R&R when he argues that all his acts in respect to the land exchange proposals were privileged legislative acts under the Speech or Debate Clause because eventually a "'foundational' legislative act occurred because the land exchange legislation was introduced in Congress. (Renzi's Objection to R&R at 20-21.) The act of introducing the legislation and subsequent conduct related to its passage is clearly privileged, but the conduct Renzi seeks to protect under the Speech or Debate Clause qualifies only if it can be said to have been an "integral part of the deliberative and communicative process by which Members participate in committee and House proceedings addressing proposed land exchange legislation." *Supra* at 4-5. This definition of a legislative act does not reach activities such as political wrangling over which congressional member should sponsor the land exchange legislation, Renzi's insistence that land exchange proponents offer to build a detox center as part of their project, or that they obtain a letter of commendation to him from the Nature Conservatory. These activities were aimed at getting political milage out of the legislation and were not an integral part of the deliberative and communicative process by which Members participate in committee or House proceedings to pass land exchange legislation.

II.   Renzi asked the Court to look behind the face of the Indictment and find that what transpired before the Grand Jury violated his constitutional rights under the Speech or Debate Clause.

The Magistrate Judge applied the following test: 1) did the Government present evidence to the Grand Jury in violation of the Speech or Debate Clause; 2) if yes, was this evidence an essential element of proof with respect to the affected counts, which here are limited to the land exchange/extortion counts (counts 1-27, 42), and 3) if yes, can the allegations and/or counts be excised, if not the SSI must be dismissed. (R&R at 28 (citing *United States v. Swindall*, 971 F.2d 1531, 1549 (11th Cir. 1992)).

*Swindall* offers directives for assessing Speech or Debate Clause violations before a grand jury, as follows: "A member's Speech or Debate privilege is violated if the Speech or Debate material exposes the member to liability, but a member is not necessarily exposed to liability just because the grand jury considers improper Speech or Debate material. 'A member of Congress may be prosecuted under a criminal statute provided that the Government's case does not rely on legislative acts or the motivation for legislative acts.' *Brewster,* 408 U.S. at 512, 92 S.Ct. at 2537. If reference to a legislative act is irrelevant to the decision to indict, the improper reference has not subjected the member to criminal liability." *Id.* at 1548. "In the absence of liability, the grand jury's consideration of improper evidence is not a Speech or Debate violation at all." *Id.* n. 21.  The case can proceed to trial with the improper references expunged." *Id.* at 1548.

The court distinguished the *Swindall* case from other cases involving improper inquiries into legislative activities, where the Supreme Court provided only the remedy of a new trial, and did not dismiss the indictment. "In *Johnson,* Speech or Debate material was improperly presented to the grand jury, and the Court ordered a new trial, reasoning that 'the Government should not be precluded from a new trial on [a] count ... wholly purged of elements offensive to the Speech or Debate Clause.'" *Id.* (citing *Johnson,* 383 U.S. at 185)).  The Court determined that the government's conspiracy case could be proved without evidence of a speech the member made on the floor of the House, therefore, the evidence of the speech was not essential to the indictment and thus did not subject the member to liability at the grand jury stage. *Id.*

"Similarly, in *Brewster,* the Supreme Court held that an indictment referring to legislative acts could stand because '[t]o make a prima facie case under this indictment, the Government need not show any act of [Brewster] subsequent to the corrupt promise for payment,' and a conviction could be sustained without 'inquir[y] into the [legislative] act or its motivation.'" *Id.* (citing *Brewster,* 408 U.S. at 526-27). "Likewise, in *United States v. Myers,* 635 F.2d 932, 941 (2d Cir.), . . . (1980), an indictment was allowed to stand because it charged an illegal promise to perform a legislative act, and there was no reason to assume that at trial the government would have to introduce evidence of the actual performance of the act." *Id.* at 1548 n. 22.

In comparison, the Third Circuit, in *United States v. Helstoski (Helstoski II),* 635 F.2d 200 (3rd Cir. 1980), dismissed an indictment because the improper use of Speech or Debate material was so widespread, it was determined to be inseparable from the indictment. "In other words, it exposed the member to criminal liability." *Id.* at 1549. As explained by the court in *Helstoski II*, it was implicit in the Supreme Court's holdings in *Brewster* and *Johnson* "*that the cases could be tried without reference to protected matters was the conclusion that the grand juries' considerations of the privileged material were not fatal to the indictments.*" *Id.* at 1548 (citing *Helstoski II*, 635 F.2d at 205) (emphasis in original). But in *Helstoski II,* the *infection could not be excised,* and the indictment was dismissed.

The same remedy applied in *Swindall* because "[t]he government itself argued that it could not have proved Swindall's *knowledge of criminality* without showing the grand jury that he was on the committees that considered the money-laundering statutes." *Id.* at 1549 (emphasis added).

Because this Court, like Magistrate Judge Velasco, rejects Renzi's blanket assertion that any and all his negotiations, discussions, and correspondence with land exchange proponents to develop and investigate their land exchange proposals are privileged under the Speech or Debate Clause, this Court also rejects Renzi's contention that the "sheer volume" of Speech or Debate Clause violations before the Grand Jury require dismissal of the SSI. Likewise, the Court rejects Renzi's argument that the Grand Jury was improperly instructed. It was told to "not consider in its deliberations any communications solely between Renzi and his legislative

- 11 -

staff that pertained to official legislative business, nor to consider any 'legislative acts' in its deliberations. The Grand Jury was expressly told that the focus of its deliberations should be on statements and communications made to and involving the Aries Group and Resolution Copper, as well as financial transactions involving Sandlin and Renzi. The Grand Jury was warned not to consider the introduction of legislation or failure to introduce legislation." (R&R at 36.) This corresponds to this Court's understanding of the Clause.

Magistrate Judge Velasco considered specific excerpts of grand jury testimony, which Defendant Renzi argues violated his rights under the Speech or Debate Clause. The testimony involved conversations and negotiations between Defendant Renzi and Bruno Hegner, a RCC executive, and Tom Glass, a consultant with Western Land Group. The conversations pertained to their land exchange proposal and changes that could be made to garner Renzi's support. The testimony reflects conversations related to promised future legislative acts.

Renzi also objects to Magistrate Judge Velasco's conclusion that only 9 exhibits (13, 15, 16, 37, 43-45, and 60) were protected by the Speech or Debate Clause. Renzi raises no specific objections to the specific findings made by Magistrate Judge Velasco, but generally objects that both the grand jury testimony and grand jury exhibits included "detailed descriptions of Congressman Renzi's negotiation, development and investigation of legislative land exchanges, the drafting and introduction of the legislation, and Congressman Renzi's motivation for performing these legislative acts." He reasserts that all the material is protected by the Speech or Debate Clause." (Renzi Objection at 29.)

Because Defendant Renzi has not objected with specificity regarding Judge Velasco's rulings as to expungement in respect to specific challenged testimony and exhibits, this Court does not address the Magistrate Judge's rulings with such specificity. Instead, the Court reviewed the Magistrate Judge's rulings and approves of his approach and findings, and offers the following examples to explain the correctness of the R&R.

Defendant Renzi categorized his allegations of privileged exhibits similar to his challenge to the grand jury testimony into three types, as follows: 1) documents alleged to reference, describe and directly involve the development of legislation; 2) documents alleged

to discuss meetings about legislation, and 3) documents alleged to involve the introduction of legislation. Specifically, Defendant challenged 19 documents: GJ Exs. 7, 10, 13, 15-17, 28-29, 36-39, 41, 43, 48-49, 58, 91, and 95.

The Government avers that document 7 was removed from the SSI grand jury proceeding and document 95 was included in the material but no testimony was given related to it.

As an example, the Court considers Renzi's claim that the Speech or Debate Clause was violated by the admission before the Grand Jury of documents that referenced, described and directly involved the development of legislation. Renzi challenged 18 documents. The Magistrate Judge found that six should be stricken, as follows: 1) Exhibit 13 (Keene informed Aries that she had sent a bill to staff for Senators McCain and Kyle and received positive feedback and Aries responded he would be comforted to know Renzi was dropping companion legislation); 2) Exhibit 15 (email between Keene and Aries regarding change in legislation, and request from Renzi for a letter from the Nature Conservancy recognizing his work on the San Pedro); 3) Exhibit 16 (Keene and Aries discuss submission to legislative counsel, and Aries' inquiry regarding whether the bill will be introduced that week and Renzi's insistence that he have a letter from the Nature Conservancy); 4) Exhibit 29 (memo from Hegner explaining how political maneuvering was delaying introduction of land exchange legislation); 5) Exhibit 37 (minutes from RCC meeting that land exchange bill was sent to Senate), and 6) Exhibit 43 (Hegner memo explaining he hoped to have bill introduced that day, but Renzi was dragging his feet).

The documents Judge Velasco did not strike were related to information about Sandlin and the Sandlin property and efforts taken by Defendant Renzi to get political milage from any land exchange legislation passed by Congress. *See e.i.,* R&R at 30-32 (discussing admissibility of Exhibit 10 (Aries informs Keene that he has funds available for purchase of Sandlin property); Exhibit 17 (email between Aries and Keene discussing Sandlin's gossiping); Exhibit 38 (email from Keene to Hegner, with AP article attached per Renzi's request showing an environment group planning to sue the military and US Fish and Wildlife over threatened San Pedro River); Exhibit 28 (email from Metzger to Hegner with Sandlin's phone per Renzi);

- 13 -

Exhibit 36 (email between Hegner and Englehorn discussing appraisal of Sandlin property); Exhibit 58 (memo from Hegner to Western Land Group regarding range of options related to Renzi's interest in securing a conservation easement on Sandlin property); Exhibit 95 (email from Glass to Western Land Group that Renzi would like RCC to send a letter to San Carlos Tribe offering to convert their hospital to a detox center and in return Renzi would request a hearing); Exhibit 39 (correspondence from Sandlin to Hegner that he had received call from Renzi saying Hegner had impression Sandlin was not cooperating on the water issue); Exhibit 41 (Hegner's note to self commemorating discussions with Renzi in April 2005, where Renzi said "no Sandlin property, no bill.); Exhibit 48 (notes by Glass during meetings with Renzi referencing Sandlin's property); Exhibit 49 (same); Exhibit 91 (notes from a meeting reflecting a detailed discussion of the Sandlin property)).

Again the Court finds that Magistrate Judge Velasco drew the line appropriately between activities that were an integral part of the deliberative and communicative process by which Members of the House participated in proceedings with respect to the consideration and passage or rejection of the land exchange legislation. In addition to the six documents above, which Judge Velasco found referenced, described and directly involved the development of legislation, he found three more documents were Speech or Debate Clause material (45, 44, and 60), as follows: Exhibit 45 (email from Hegner stating the Act was introduced in the House and Senate, noting the primary sponsors as Kyl and Renzi); Exhibit 60 (email from Glass to Penry with Western Land Group regarding Renzi acting to delay Bill's introduction), and Exhibit 44 (informing Rickus that Bill introduction will take place on Thursday).

Without some specific objection made by Defendant Renzi in respect to the specific findings of expungement made by Judge Velasco, it appears to this Court that he drew the line precisely where it should have been drawn in respect to the Speech or Debate Clause privilege. This Court affirms the Magistrate Judge's conclusion that the grand jury testimony did not violate the Speech or Debate Clause and that even if the few offending overt references to legislative acts in the exhibits are stricken, it does not result in any insufficiency of the Indictment. (R&R at 35.) The case shall proceed to trial with these allegations expunged.

- 14 -

The Court denies Defendant Renzi's motions to dismiss the Indictment because it is not based on acts that must necessarily be proven by the introduction of evidence of legislative acts of the type protected by the Speech or Debate Clause.

**IT IS ORDERED** that after a full and independent, *de novo*, review of the record related to the objections from Defendant Renzi, the Magistrate Judge's R&R (doc. 387) is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that Defendant's motion to dismiss the Indictment because the Government based the charges in the Indictment on Renzi's legislative acts and must necessarily introduce evidence of legislative acts to prove its case at trial (doc. 86) is DENIED.

**IT IS FURTHER ORDERED** that Defendant's motions to dismiss the Indictment for Speech or Debate Clause violations in the grand jury proceeding (doc. 264, 327) is DENIED.

**IT IS FURTHER ORDERED** that this matter remains referred to Magistrate Judge Bernardo P. Velasco for all pretrial proceedings and Report and Recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LR Civ. 72.1(a), Rules of Practice for the United States District Court, District of Arizona (Local Rules).

**IT IS FURTHER ORDERED** denying Renzi's Request for Oral Argument.

**IT IS FURTHER ORDERED** denying Defendant Sandlin's Motion to Join in Renzi's motions to dismiss (doc. 328).

DATED this 17th day of February, 2010.

David C. Bury
United States District Judge