1    WO

6                    **UNITED STATES DISTRICT COURT**

7                         **DISTRICT OF ARIZONA**

8   United States of America,                 )
9                              Plaintiff,     )
10  v.                                        )      CR 08-212 TUC DCB (BPV)
                                              )
11  Richard Renzi, James Sandlin, Andrew Beardall,)      **O R D E R**
    and Dwayne Lequire,                       )
12                                            )
13                              Defendant,    )
    _____)

14          This matter having been referred to Magistrate Judge Bernardo P. Velasco, he issued an

15  Order on January 8, 2009, pursuant to  28 U.S.C. § 636(b)(1)(A).   He granted in part and

16  denied in part the Sandlin and Beardall severance motions, and deferred ruling on part of the

17  Renzi and part of the Beardall severance motions.  (Severance Order (doc. 252)).

18          Shortly thereafter, the Government filed the Superseding Indictment adding among other

19  things a RICO count against Defendant Renzi, which was followed by a motion from Defendant

20  Renzi to dismiss the RICO claims and motions by all Defendants to severe the counts in the

21  Superseding Indictment. On April 10, 2009, this Court held in abeyance its ruling on objections

22  filed to the Order issued on January 8, 2009, addressing the initial severance motions, so the

23  Superseding Indictment and the addition of the RICO claims (count 42) could be considered.

24          On September 21, 2009, the Magistrate Judge issued an R&R recommending that the

25  motion to dismiss the racketeering count (doc. 261) be denied, except as to act two of the RICO

26  claim which alleges a scheme to deprive the United States of honest services and to extort

27  constituents (i.e., the land exchange counts). (RICO R&R (doc. 463)). On September 22, 2009,

28  the Government issued the Second Superseding Indictment (SSI), which it asserts strengthens

    the RICO count (count 47) against Defendant Renzi.  The parties were given an opportunity to

supplement their pending motions to address the effect of the SSI on the RICO and severance motions. This Court considered supplemental arguments on the RICO claims, and Magistrate Judge Velasco considered them in respect to the Order he issued on December 11, 2009, addressing the severance motions presented by the Defendants. (Severance Order (doc. 557)).

The Magistrate Judge vacated his original severance Order issued on January 8, 2009, and denied as moot the motions to sever the original Indictment (docs. 99, 101), which were subsumed in later filed motions (docs. 262, 266), and construed Beardall's motion to sever counts and defendants in the original Indictment (doc. No. 110), and Renzi, Sandlin and Lequire's motions to sever counts and defendants in the Superseding Indictment (docs. 260, 262, 266) as motions to sever counts and defendants in the SSI.

Again, Magistrate Judge Velasco grants in part and denies in part the motions to sever. He severed the counts in the SSI for three separate trials, but did not sever any of the Defendants.

First he severed the land exchange counts (counts 1 through 27)(charging Renzi and Sandlin with honest services, wire fraud, money laundering, etc., all deriving from the allegations that they engaged in an extortion scheme in which they induced an investment group to purchase real estate owned by Sandlin using a promise by Renzi to exercise his official authority) and (count 48) (charging Renzi with making a false statement by failing to report $700,000 received from Sandlin on his Form 1040 Individual Tax Return for calendar year 2005).

Second, he severed the insurance fraud claims (counts 28 and 33 through 35) (charging Renzi and Beardall with conspiring to embezzle and misappropriate client premium funds received by Renzi and Company/ Patriot Insurance Agency to fund Renzi's congressional campaign), (counts 36-46) (charging Renzi and Lequire with conspiring to embezzle and misappropriate client premiums held by Patriot Insurance as fiduciary for Spirit Mountain Insurance Company, a risk retention group), and (count 47) (charging Renzi with engaging in the conduct of the affairs of the Renzi and Company/Patriot Insurance enterprise through a pattern of racketeering involving three predicate acts, as follows: act one (use of insurance

premiums to fund Renzi's first congressional campaign) and act three (misappropriations of premiums from Spirit Mountain Insurance Company for his own personal use). Magistrate Judge Velasco recommends dismissing the second predicate act for the RICO count, which charges act two (a scheme to extort constituents and deprive them of honest services).

Third, the Magistrate Judge severed count 49 against <u>Sandlin</u> for making campaign contributions in the name of another.

The parties filed objections to the severance Order and the R&R regarding Defendant Renzi's Motion to Dismiss the RICO charge in the SSI. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(a) and (b). Both the severance and RICO questions are fully briefed and ready for this Court's review. Because the addition of the RICO claims affect the severance motions, the Court considers both the Severance Order, issued on December 11, 2009, and the R&R, issued on September 21, 2009, addressing Defendant Renzi's Motion to Dismiss the RICO claims in the SSI.

The Court affirms the Magistrate Judge's severance of the counts, and his refusal to sever the Defendants. The Court follows the recommendation of the Magistrate Judge and grants in part Defendant Renzi's motion to dismiss the RICO claims as to predicate act two, and denies the motion in all other parts.

## UNITED STATES' OBJECTION

The Government argues that the Magistrate Judge's severance of the counts into three groups for trial is based on his erroneous interpretation of the RICO statute and his recommendation that predicate act two of the racketeering count be dismissed. Because predicate act two should remain in the racketeering count (count 47 of the SSI), all the activity charged in count 47 should be tried together as to Renzi and Sandlin, including the allegations in act two of the RICO claim that Renzi engaged in a scheme to deprive the United States of honest services and to extort constituents (the land exchange counts).

The Government argues, "[i]n short, defendant Renzi conducted his affairs through the RICO enterprise, Patriot Insurance, in the commission of the crimes in each count group, and the defendants committed a series of acts or transactions designed to both launder money

through the enterprise . . . and to fund the enterprise on the numerous occasions when it was on the brink of extinction. . . . (Government's Objection to Severance Order (557) at 2.) If the Court overturns the recommendation of the Magistrate Judge to dismiss the land exchange/extortion predicate act for the RICO count, it provides an independent basis for joinder of all counts for trial. *Id.*

The Government believes that all counts and all Defendants may be tried together, except any interlocutory appeal of any adverse speech or debate ruling from this Court will necessarily stay the trial as to Defendant Renzi and Defendant Sandlin, who has asserted that he should be tried with Defendant Renzi. *Id.* at 3-4. Consequently, given this Court's adverse ruling on Defendant Renzi's speech or debate motions, only the insurance fraud claims are in a position to move forward and are, therefore, practically severed for purposes of trial from the land exchange counts. The Government preserves its argument that, "to the extent there ever came a time when defendant Renzi were the only defendant remaining, Fed. R. Crim. P. 8(a) provides a more permissive basis to join count groups 'of similar character' against a solitary defendant charged with the entire course of conduct." *Id.* at 3 n. 3.

## DEFENDANTS' OBJECTIONS

Defendant Renzi objects to the Magistrate Judge's recommendation that the two insurance counts against Defendants Renzi, Lequire, and Beardall and the RICO count against Renzi be tried together. Defendant Renzi makes the same argument for severance that he makes in his motion to dismiss the RICO claims, which is that the RICO and insurance counts do not involve the same act or transaction, or even the same series of acts or transactions . . .." (Renzi Objection to Severance Order (557) at 3.) Defendant Renzi suggests that his trial be severed from co-defendants Lequire and Beardall, "then the remaining charges against Congressman Renzi would be subject to Rule 8(a), which would permit the joinder of the RICO and insurance charges against him because those counts have similar characteristics. *Id.* at 7.

Defendant Lequire objects to the Magistrate Judge's failure to sever the two insurance fraud counts. Defendant Lequire argues that there are two separate and distinct insurance violations. The Beardall/Renzi & Company claims began in 2001 and ended in 2003. The

Lequire/Spirit Mountain Insurance claims did not occur until April 2006. Beardall and Lequire did not work together and did not know one another. The allegations regarding Beardall are not related or based on the same facts as the allegations against Lequire. There are two separate conspiracies; there is no overlapping conspiracy. Evidence against one would not be admissible against the other. (Lequire Objection to Severance Order (557) at 1-2.)

For the same reason, Defendant Lequire argues claims against him must be severed from the claims against Defendant Beardall, but he also moves for severance as between himself and Defendant Renzi because there was an attorney-client relationship and privileged attorney-client communications are inextricably intertwined with the criminal trial. He argues that he and Defendant Renzi will have antagonistic defenses, which requires severance. He criticizes the Magistrate Judge's decision to determine the admissibility of privileged evidence on a communication-by-communication basis during the trial because inevitably the defendants will have to be severed and judicial resources will have been wasted on the attempt at jointly trying Renzi and Beardall. Defendant Beardall argues that to protect Renzi's interest in the privileged communications, Beardall must be tried after Renzi. (Beardall Objection to Severance Order (557) at 1-7.) As the Magistrate Judge noted, "Renzi has not moved to sever his trial with Beardall." (Severance Order at 22.)

Defendants Beardall and Lequire argue that even if joinder is proper under Fed. R. Cr. P. 8(b), their trials should be severed under Fed. R. Cr. P. 14 because there is a serious risk that a joined trial will prejudice their respective trial rights and/or prevent a jury from making a reliable judgment about guilt or innocence. Beardall argues he is only charged with four counts, involving only three letters, during a brief period of four months, as compared to 16 charges against Renzi and Lequire, covering a much broader scheme of alleged conduct over several years. Defendant Lequire argues a joint trial, with Beardall and Renzi, will confuse the jury regarding which evidence applies to which defendant.

## STANDARD OF REVIEW

The duties of the district court in connection with a R&R, like that issued by Magistrate Judge Velasco on September 21, 2009, are set forth in Rule 72(b) of the Federal

Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b), 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are filed, the district court need not review the R&R *de novo*. *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir.2003) (en banc).

As for reconsideration of the severance Order issued by the Magistrate Judge on December 11, 2009, the Court will not disturb it unless it is clearly erroneous (factual findings) or contrary to law (legal conclusions). 28 U.S.C. § 636(b)(1)(A); Fed. R. Cr. P. 59(a). "[T]he magistrate judge's decision . . . is entitled to great deference by the district court." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir.2001)). A failure to raise an objection waives it. 28 U.S.C. § 636(b)(1)(A).

## RECONSIDERATION AND REVIEW

The SSI alleges facts supporting a *prima facie* RICO claim because it alleges Defendant Renzi conducted or participated in the conduct of an enterprise, Patriot Insurance, *through* a pattern of racketeering activity.

The enterprise is Defendant Renzi's insurance company, which in 2001-2003 was a traditional insurance company, Renzi and Company, and by 2006 was Patriot Insurance, serving as fiduciary for Spirit Mountain Insurance Company Risk Retention Group, Inc., which was composed of the same non-profit entities that had been served by Renzi and Company.[1]

---

[1]This Court rejects the notion the Patriot Insurance is not a valid RICO enterprise. Even if the Court were to follow *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 261 (3rd Cir. 1995), which has been noticeably criticized and distinguished, (Government's Response to Renzi's Supplemental Memo in Support of RICO Motion to Dismiss at 2-4), it would not preclude treating Patriot Insurance as the RICO enterprise. The problem addressed in *Jaguar*

The SSI alleges that Defendant Renzi was the principal decision-maker for and controlled the enterprise, Patriot Insurance. "[H]is object [was] to engage in an ongoing and continuous fraud scheme in which (1) funds in trust not due and owing to PI were unlawfully withdrawn and disbursed to pay for the expenses of the enterprise, political campaign expenses, and Renzi's personal taxes and campaign expenses; (2) other criminal activity was committed by Renzi to provide funds to the enterprise; and (3) funds that should have been promptly refunded to customers, paid over to carriers, and paid to Spirit Mountain, were kept by Renzi for his own and the enterprise's use and benefit. (RICO R&R at 2 (citing SI, ¶ 88)).

Accordingly, the Government charges a pattern of racketeering activity, consisting of predicate acts as follows: 1) the use of insurance premiums held in trust to fund Renzi's first Congressional campaign (racketeering act one); 2) a scheme to deprive the United States of "honest services," and to extort constituents (racketeering act two); and 3) misappropriations from Spirit Mountain Insurance Company (racketeering act three). (RICO R&R at 2 (citing SI, ¶¶ 85-114)).

Here, the Magistrate Judge found that in respect to predicate act two of the RICO count, the racketeering act of extortion/honest service was not the conduct of the enterprise, Patriot Insurance. "RICO does not require that the alleged racketeering conduct *be* the conduct of the alleged enterprise." *Sun Savings and Loan Assoc. v. Dierdorff*, 825 F.2d 187, 194 (9th Cir. 1987). It simply requires a "nexus" between the enterprise and the racketeering activity. (RICO R&R at 4 (citing *United States v. Yarbrough*, 852 F.2d 1522, 1544 (9th Cir.

---

*Cars* is "when the corporation is the named defendant – when it is both the person and the enterprise," *id.* at 269, which is corrected by alleging conduct by officers or employees who operate or manage the corporate enterprise, *id.* at 268. Here, Renzi is the named person, operating the enterprise, Patriot Insurance, through a pattern of racketeering. The SSI alleges that insurance premiums were paid to Patriot Insurance, but instead of operating Patriot Insurance to provide insurance coverage, Renzi operated the enterprise to embezzle the premiums for his own use. Patriot Insurance was not "a victim corporation" addressed as a concern in *Jaguar Cars. Id.* at 267.

1988)).  "The enterprise is 'simply the means or structure through which the racketeering crimes occur.'"  *Id.* at 7 (citing *Yarbrough*, 852 F.2d at 1544).

Defendant Renzi does not challenge the "nexus" between Patriot Insurance and predicate acts one and three, the insurance fraud counts.  He only challenges the nexus between Patriot Insurance and the second predicate act, the extortion/honest services/wire fraud scheme.  Magistrate Judge Velasco was persuaded that "Racketeering Act Two, as alleged, is a demonstration of Defendant Renzi conducting his own affairs by means of extortion and fraud, and not the affairs of the enterprise, nor was he conducting his own affairs 'through' the enterprise."  (RICO R&R at 7.)

The Government argues that the SSI, filed the day after Judge Velasco issued the R&R on the motion to dismiss the RICO claims, added the following allegation, incorporated into racketeering act two at ¶ 96: "On or about May 20, 2005, RENZI deposited the $200,000.00 check into a Patriot Insurance bank account, *of which Renzi used $164,590.68 on or about June 1, 2005, to pay on a Promissory Demand Note.  That Note was entered into in January 2005 by Patriot Insurance and a creditor.'*" (Government's Objection to RICO R&R (463) at 6.) (emphasis added).  The Government argues that it is enough to show that the extortion predicates are simply related to the activities of the enterprise, Patriot Insurance, and it is enough to show that extortion proceeds were funneled through Patriot Insurance bank accounts.  *Id.* at 5.  The Government argues that the Magistrate Judge did not give enough weight to the money laundering sub-predicates in the racketeering count; laundering the proceeds of his extortion was an integral part of the extortion scheme and Renzi did this by funneling money through Patriot Insurance bank accounts.   The Government argues that Renzi's extortion was related to the affairs of Patriot Insurance because he was having financial difficulty throughout 2005 and needed a substantial infusion of funds to keep his insurance business solvent and to maintain his personal lifestyle.  *Id.*

The notion that the motivation for the extortion act was to replenish the coffers of Patriot Insurance was properly rejected by Magistrate Judge Velasco as too tenuous to support the RICO charge. (RICO R&R at 7 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). The Magistrate Judge looked for an actual relationship between the extortion act and Patriot Insurance and found none. The new allegations offer nothing more than what was considered by the Magistrate Judge.

A nexus between the racketeering activity and the enterprise exists "'when 1) one is able to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise, or 2) the predicate offenses are related to the activities of that enterprise.'" *Id.* at 4 (quoting *Yarbrough*, 852 F.2d at 1544 (citing *United States v. Scotto*, 641 F.2d 47, 54 (2nd Cir. 1980)). "The racketeering activity must 'stem from the enterprise's activities or otherwise have some relationship to the enterprise.'" *Id.*

The Government does not include count 11 (money laundering conspiracy) or count 12 (money laundering concealment) in predicate act two. It relies on paragraphs 1-14, 16-18, 19-24, and 25a-bb of the SSI, which with the exception of paragraph 25 refer in general terms to acts by Defendant Renzi and Sandlin to conceal that money from the sale of the Sandlin property was going to Renzi. If there is a nexus, it must be found in Paragraph 25, which alleges that on May 5, 2005, when Investment Group B wired Sandlin $1 million dollars, he wrote a $200,000 check payable to Renzi Vino, Inc., which Renzi deposited into a Patriot Insurance bank account, from which he paid a Promissory Demand Note for $164,590.68 to a Patriot Insurance creditor. (SSI at ¶ 25(p-r)). On September 30, 2005, Renzi sent a letter from Patriot Insurance to Sandlin which falsely stated he was calling in a note on a piece of property in Kingman, Arizona, and the escrow for payments on the note would be handled by Patriot Insurance. Sandlin paid $533,000 of the alleged extortion proceeds to Patriot Insurance, which were siphoned off for Renzi's personal use. *Id.* at ¶ 25(u-w), (z-aa).

The Court agrees with Magistrate Judge Velasco that Renzi was not able to commit the predicate offense of extortion solely by virtue of his position, or involvement in, or control over the affairs of Patriot Insurance. Magistrate Judge Velasco correctly concluded that Defendant Renzi did not engage in the extortion and deprivation of honest services, "through" Patriot Insurance, instead the SSI charges he used his position as a member of Congress to extort the land deal from developers. (RICO R&R at 5.) The predicate offenses of extortion and depriving the United States of honest services were not related to the activities of Patriot Insurance. The SSI does not allege money laundering as an integral part of the extortion claim, but alleges generally that Renzi and Sandlin took measures to conceal Renzi's receipt of the extortion proceeds. It only alleges money obtained by extortion activities were deposited into Patriot Insurance accounts and used to pay a Patriot Insurance creditor and for Renzi's own personal use. Even if this established a "nexus" between the extortion predicate act and the enterprise, Patriot Insurance, Defendant Renzi only accessed the extortion money through Patriot Insurance, which is not the same as conducting Patriot Insurance *through* a pattern of racketeering.

"Proof of a pattern of racketeering requires proof of two or more racketeering acts, which may or may not be sufficient to prove a RICO violation, if there is a relationship between the predicate acts, and there must also be the threat of continuing activity." (RICO R&R at 7-8) (citations omitted). Predicate acts are related if they have the same or similar purposes, results, participants, victims or methods of commission, and are not isolated events. *Id.* Continuity may be either closed or open-ended, referring to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. *Id.*

Judge Velasco found that Defendant conducted the affairs of Patriot Insurance in a criminal manner approximately one-third of the time, with a closed-ended continuity. (RICO R&R at 10.) Whereas he found "the land exchange offenses and insurance fraud offenses are not related in time, place, or manner, "(RICO R&R at 9), he found racketeering acts one and three established a pattern of racketeering activity sufficient to survive the

motion to dismiss, *id.* at 9-10.  He explained that the insurance fraud offenses "had much more in common than Defendant Renzi."  *Id.* at 9.  "Both insurance fraud schemes had the same or similar purposes – to enrich Defendant Renzi by diverting insurance premium funds which were not the property of Renzi, and to conceal the misappropriation and to embezzle and misappropriate client premiums to pay Renzi's substantial personal expenses; both had similar results – movement of insurance premiums held in trust through numerous accounts to either Renzi for Congress or Renzi's personal accounts and both had similar methods of commission – the issuance of letters and payments through interstate mailings to conceal the misappropriation.  The Court agrees this satisfies the relatedness requirement for a pattern of racketeering.  (RICO R&R at 9.)

The Magistrate Judge held that this was not a short span of time and was sufficiently long in duration to establish closed-ended continuity because over approximately 8 years the SSI alleges "that approximately one-third of the time Renzi conducted PI business in a criminal manner; certainly, short of running an entirely criminal enterprise, it would be hard to envision a more 'regular way of conducting' PI's business."  *Id.* at 9-10.  The Government argues that racketeering acts one and three reflect an overall pattern of Renzi robbing Patriot Insurance whenever he needed cash, which commenced no later than 2001 and continued through at least 2007, and which could be expected to continue into the future.  This Court agrees with both Magistrate Judge Velasco and the Government.

"Congress was concerned in RICO with long-term criminal conduct."  *H.J. Inc. v. Northwest Bell Tel. Co.*, 492 U.S. 229, 242 (1989).  Closed-ended continuity is shown if a series of related predicate acts extended over a substantial period of time.  Open-ended continuity is shown where related predicate acts themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit.  *Id.* at 242-43.

Renzi disputes the duration of the alleged racketeering because "the first predicate act of Racketeering Act 1 – a legally invalid honest services fraud charge, alleged to have occurred on January 24, 2002, must be put aside."  (Renzi Objection to RICO R&R (doc.

463) at 6.)  "[W]ith Racketeering Act 1A struck from the RICO count, Racketeering Act 1 covers a period of only 8 months."  The Court rejects Renzi's argument that racketeering act 1A must fail because it alleges an honest services offense *prior to his election to Congress* and the honest services statute does not apply to conduct by a candidate who is merely seeking election to public office.  *Id.* at 8-9 (citing *United States v. Turner*, 465 F.3d 667, 669-70 (6th Cir. 2006)).  The honest service charges in predicate act 1A pertain to honest services owed by Renzi's insurance companies to insureds, not the United States.

The Court agrees with Magistrate Judge Velasco that predicate act one lasted 14 months, and racketeering act three lasted 24 months.  The racketeering activity was committed over an eight-year period, but there was a span of three years and two months between the predicate acts.  The return after three years to the same conduct used previously of collecting premiums but not purchasing coverage and instead diverting premium money for his own use reflects a pattern of racketeering.  Racketeering acts two and three are related to each other and have both open-ended and closed-ended continuity.

Because the insurance fraud claims are predicate acts one and two of the RICO claim, the discussion above in respect to the relationship between them is relevant to the question of severance of defendants under Fed. R. Crim. P. 8(b), which precludes joinder "unless all defendants 'are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense or offenses.'" (Severance Order at 9) (citations omitted).  "In determining whether two or more offenses are part of the 'same series of acts or transactions constituting an offense,' Fed. R. Crim. P. 8(b) courts must look for a 'logical relationship' between the offenses."  *Id.* (citations omitted).  "'[T]ransactions' has a flexible meaning and [] the existence of a 'series' depends upon the degree to which the events are related.  Mere factual similarity of events will not suffice.  Rather, here must be some greater 'logical relationship' between the occurrences.  Such a logical relationship may be shown by the existence of a common plan, scheme, or conspiracy."  *Id.* (citing *United States v. Ford*, 632 F.2d 1354, 1371-72 (9th Cir. 1980).  A 'logical relationship' may also be shown if 'the common activity constitutes a substantial portion of the proof of the

joined charges." *Id.* (citing *United States v. Vasquez-Velasco*, 15 F.3d 833, 844 (9th Cir. 1994). The question turns on the degree to which the acts or transaction are related, and that relation is most often established by showing that substantially the same facts must be adduced to prove each of the joined offenses. *Id.* at 11 (citing *United States v. Satterfield*, 548 F.2d 1341, 1344 (9th Cir. 1977)).

Because this Court finds that the RICO predicate acts one and three, but not two, have the same or similar purposes, results, participants, victims or methods of commission, and are not isolated events, they are related. In other words, the insurance fraud claims are related, but not the extortion/honest service claims. The insurance fraud claims are related for the purpose of establishing a pattern of racketeering and for determining the question of severance. It does not matter that Defendants Beardall and Renzi are charged in counts 28, 33-35 and Defendants Lequire and Renzi are charged in counts 36-46, or that Renzi alone is charged in counts 29-32. Separate conspiracies with different memberships may still be joined if they are part of the same series of acts or transactions. *United States v. Weaver*, 905 F.2d 1466, 1476 (11th Cir. 1990). *Id.* After a *de novo* review of the record, the Court agrees with Magistrate Judge Velasco that the insurance conspiracies may be tried together, with the RICO case. It is not improper to join Defendants Renzi, Beardall, and Lequire for trial on these counts.

Although not all witnesses will be common against Beardall and Lequire, there will be substantial overlap in respect the insurance industry in general, the role of insurance agents like Patriot Insurance, and the fiduciary obligations owed by insurance agents, specific testimony about the operations of Patriot Insurance from employees, a description from on-site agents as to seizure of documents, in electronic and hard copy, and possible forensic testimony to authenticate electronic evidence. As between Beardall and Lequire, the evidence will be easily distinguishable because of the three-year time difference in the activities. Consequently, the Court finds no prejudice under Rule 14, and or that any prejudice may be allayed with a cautionary instruction.

In addition to finding that the extortion claims were not related to the insurance fraud claims, the Magistrate Judge correctly noted that the Government failed to show that substantially the same facts must be adduced to prove the land exchange/extortion case as to prove the insurance fraud claims. (Severance Order at 12.) Defendant Sandlin asks only for severance of count 48 charging Renzi with making a false statement in a federal tax return, arising from the Government's allegations that Renzi did not report $700,000.00 received from Sandlin on his Form 1040 Individual Tax Return for calendar year 2005. The Magistrate Judge properly found this claim sufficiently related to the land exchange/extortion counts. Again, the evidence will be limited and easily distinguishable so that any prejudice to Sandlin under Rule 14 may be corrected by a cautionary instruction.

The Magistrate Judge properly found no similarity to any other offenses, as to count 49 against Sandlin, campaign contributions in the name of another. This count will be tried separately unless for some reason Defendant Sandlin is tried alone. Under such circumstances, joinder of this claim would be appropriate under Fed. R. Crim. P. 8(a).

"Rule 14 recognizes that even when counts are properly joined under Rule 8(b), a severance may be appropriate to avert prejudice to a defendant, although 'Rule 14 sets a high standard for a showing of prejudice.' . . . Central to the court's determination in assessing whether joinder is prejudicial, is whether the evidence as it relates to the individual defendants is easily compartmentalized." (Severance Order at 15) (citations omitted). After weighing consideration of any prejudice to co-defendants against the efficiency of a joint trial, the Court finds that the efficiency of a joint trial of co-defendants charged in each of the two categories severed above (insurance fraud and land exchange counts) outweighs the potential prejudice, which is lessened by the Court's severance of counts, above, and can be further constrained by limiting instructions to the jury where appropriate." *Id.*

The Court agrees with Magistrate Judge Velasco's recommendation to not sever the defendants, within the severed counts, because the individual defendant's respective roles

and conduct will be easily compartmentalized and the potential for prejudice will be lessened by a limiting instruction to the jury.

This finding does not end the inquiry as to Defendant Beardall's motion, which in addition to arguing prejudice due to spill over from the voluminous evidence related to the land exchange scheme, he submitted his trial must be severed from Renzi's to allow Beardall to present exculpatory evidence that could be excluded at a joint trial due to the attorney-client relationship that existed because Beardall was General Counsel to Patriot Insurance. After an *en camera*, *exparte* hearing and review, the Magistrate Judge concluded that Beardall had a protected attorney-client relationship with Renzi and Patriot Insurance. There is no objection from the parties on this point.

The Magistrate Judge concluded that "at least some of the proffered evidence would be of such exculpatory value that the exclusion of such evidence would amount to a denial of Beardall's right to present a defense, and must be admitted at trial over Renzi's claim of privilege." (Severance Order at 18.) However, he noted that Beardall has not asserted that the exculpatory evidence protected by the attorney-client privilege would necessarily implicate Renzi. *Id.* at 21. And, "Athough Renzi has suggested that it is possible he would rely on an advice of counsel defense, his theory of the case is unknown at this time." *Id.* "Furthermore, outside of Beardall's argument that a joint trial with Renzi and Sandlin would result in 'extreme prejudice' due to spillover effect, Beardall has not asserted that a joint trial with Renzi would be unfairly prejudicial to him, as long as he is able to present the privileged communications which are sufficiently probative in support of his defense. Renzi has not moved to sever his trial with Beardall." *Id.* at 21-22.[2]

---

[2]Renzi does argue that if the Court severs his trial from Beardall's it will moot any conflicts between the two defendants because: 1) Renzi's trial and the jury's decision will inform the Court's judgment as to whether the crime-fraud exception applies to Renzi-Beardall communications; 2) Renzi has not decided on whether to assert a reliance on advice of counsel defense, which would likely result in his waiving his privilege with Beardall, and 3) even if Renzi does not formally assert this defense, he may nevertheless waive his attorney-client privilege by testifying in his own defense as to privileged conversations. The Court notes that

Given the posture of the severance question related to attorney-client privilege, the Magistrate Judge adopted the reasoning of the court in *W.R. Grace*, which advises the Court to make a particularized determination on a communication-by-communication basis at the time of trial as to which evidence and testimony is protected by the attorney-client privilege and whether it is admissible over any assertion of privilege by Renzi. *Id.* at 18-19 (citing *United States v. W.R. Grace*, 439 F. Supp. 2d 1125 (Mont. 2006)). Under *Grace*, admissibility depends on weighing the competing interests, with the exculpatory value of the lost evidence to the accused weighing most heavily on the scale of a fair trial. *Id.* at 1140.

This Court agrees that given the posture of the severance question based on Beardall's arguments of attorney-client privilege, the *W.R. Grace* approach is reasonable. Beardall will be required to notify the Court, in writing, at least two days in advance of his intent to introduce any such communications. The notice will be filed *ex parte* and should include a copy of the privileged document or summary of testimony to be offered and a short explanation of the relevance of the evidence to his defense.

As the Magistrate Judge noted, "[j]oint trials 'play a vital role in the criminal justice system' by promoting efficiency and serving the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." (Severance Order at 20) (citation omitted). "'[W]hen defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14 only if there is serious risk that a joint trial could prejudice a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Id.* (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)).

"Conflicting and antagonistic defenses being offered at trial do not necessarily require granting a severance, even if hostility surfaces or defendants seek to blame one another." *Id.* (citations omitted). "Severance should be granted when the defendant 'shows

---

Renzi's theory of mootness depends on his trial going first, which is unlikely given his commitment to appeal the Court's rulings on the Speech or Debate Clause and the Court's rulings on the severance motions.

that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant.'" *Id.* at 21 (quoting *United States v. Throckmorton*, 87 F.3d 1069, 1072 (9th Cir. 1996)). No such showing has been made by either Beardall or Renzi at this time.

The Court finds no clear error in the Magistrate Judge's conclusion that "at this time . . . it has [only] been established that Beardall had an attorney-client relationship with Renzi, that at least some of Beardall's proffered evidence is of sufficient exculpatory value that the exclusion of such evidence would amount to a denial of Beardall's right to present a defense, and must be admitted at trial over Renzi's claim of privilege, and that at this time, no demonstrable prejudice from a joint trial of Renzi and Beardall has been demonstrated." *Id.* at 22.

## CONCLUSION

The Court denies Renzi's motion to dismiss the racketeering count, except for dismissing predicate act two. The Court finds that the counts in the SSI are severed into three groups for the purposes of trial: counts 28-47; counts 1-27 and 48, and count 40. The requests for severance of co-defendants within each of the groups are denied.

**Accordingly,**

**IT IS ORDERED** that after a full and independent, *de novo*, review of the record related to the objections from the Defendants, the Magistrate Judge's Report and Recommendation (doc. 463) regarding the motion to dismiss the RICO count is accepted and adopted as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that the motion to dismiss the racketeering count (doc. 261) is DENIED IN PART AND GRANTED IN PART as follows: the motion to dismiss is denied in all parts, except for dismissal of the predicate racketeering act two.

**IT IS FURTHER ORDERED** AFFIRMING the Magistrate Judge's Order (doc. 557) DENYING IN PART AND GRANTING IN PART the motions to sever (doc. 110, 260, 262, 266) as follows: 1) Severance is GRANTED as to the counts in the SSI for the

purposes of trial into three groups, which are counts 28-47, counts 1-27 and 48, and count 49, and 2) Any request for severance of co-defendants within each of the three groups is DENIED.

**IT IS FURTHER ORDERED** that this matter remains referred to Magistrate Judge Bernardo P. Velasco for all pretrial proceedings and Report and Recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) and LR Civ. 72.1(a), Rules of Practice for the United States District Court, District of Arizona (Local Rules).

DATED this 17th day of February, 2010.

David C. Bury
United States District Judge