WO

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | |
| Plaintiff, ) | CR 08-212 TUC DCB (BPV) |
| v. ) | **O R D E R** |
| Richard Renzi, James Sandlin, Andrew Beardall, ) and Dwayne Lequire, ) | |
| Defendant, ) | |

This matter having been referred to Magistrate Judge Bernardo P. Velasco, he issued a Report and Recommendation (R&R) on March 11, 2010. (Doc. 594.) The Magistrate Judge recommended denying in part and granting in part Defendant Renzi's Motion to Dismiss the Indictment Based on the Government's Unlawful Recording of Privileged Counsel Calls. (Doc. 87.) Defendant Renzi argued that the wiretap violated Title III, 28 U.S.C. § 2518, and the Fourth, Fifth and Sixth Amendments to the United States Constitution. The Magistrate Judge found violations of Title III and the Fourth Amendment, but not the Fifth and Sixth Amendments. He recommended suppression of all evidence obtained by the illegal wiretap, but denial of Defendant Renzi's request to dismiss the Second Superseding Indictment (SSI) or disqualify the prosecutors involved in his investigation and prosecution.

The parties filed objections to the R&R, pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b). After *de novo* review, the Court adopts the Magistrate Judge's R&R as the opinion of the Court.

The duties of the district court in connection with a R&R are set forth in Rule 59(b)(3) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations

made by the magistrate judge." Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1). Where the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *see Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are filed, the district court need not review the R&R *de novo. Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir. 2003) (en banc).

## THE R&R

The R&R appropriately began with the wiretap Order and the minimization protocol for attorney-client calls in the application for the wiretap approved by the Supervising Court. Prior to obtaining the wiretap, the Government identified the Patton Boggs law firm as representing Renzi from the Federal Election Commission (FEC) inquiry and criminal attorney, Grant Woods, as a possible additional lawyer. Agent Odom represented to the Supervising Court that all attorney-client privileged conversations would be minimized. The Supervising Court issued the wiretap Order directing the Government to minimize all such interceptions in accordance with Title III. (R&R at 2-4.)

The wiretap Order included provisions for a "taint team" to be established to address contemplated interception of communications that implicated the Speech or Debate Clause, but it did not include any taint team provision to allow the Government to record or review communications implicating the attorney-client privilege. *Id.* at 4.

"The Government instructed the monitoring agents, via memorandum, that ' [n]o conversation may be intercepted that would fall under any legal privilege.' Monitoring agents were directed to never knowingly listen to or record a confidential legal conversation involving an attorney. The monitoring agents were directed to notify the supervising agent of the conversation, shut off the monitor and stop recording. The memorandum instructed the agents not to listen to any conversation involving the referenced attorneys, Grant Woods and Patton Boggs." *Id.*

The Government, however, did not apply these procedures and protocols to telephone communications between Defendant Renzi and attorney Maria Baier. The Government also

failed to follow attorney-client protocols for two privileged telephone calls with Glenn Willard and one with Kelly Kramer.

The Magistrate Judge found that the Government seized evidence beyond that authorized by the wiretap Order when it recorded for taint team review attorney-client privileged communications between Defendant and attorney Maria Baier. The Magistrate Judge found that the Government unreasonably executed the wiretap when it recorded calls it knew or should have known were from attorneys representing the Defendant and then failed to seal and report to the Supervising Court the privileged information it seized. *Id.* at 15. Specifically, the Magistrate Judge found 12 violations where the Government seized evidence beyond that authorized by the wiretap Order and unreasonably executed the search, as follows:

> 1. The government's failure to direct the minimization of the Baier calls after Renzi identified Baier as his "personal attorney" and an investigator found proof of Baier's licensure. R&R at 16.
>
> 2. The government's failure to direct the minimization of the Baier calls after the initial consultation during the interception period with the taint attorney. R&R at 12, 16.
>
> 3. The failure to minimize session 2997 with Glenn Willard, an attorney for Renzi. R&R at 16.
>
> 4. The government's failure to immediately minimize the call, session 3084, with Kelly Kramer. R&R at 16.
>
> 5. The government's failure to designate any of the privileged calls as privileged [on the Voicebox system]. R&R at 16.
>
> 6. Agent Dillender's recording, monitoring, synopsizing and designation of session 2997 as pertinent. R&R at 16.
>
> 7. The government's failure to designate the recorded portion of session 3295 [with Glenn Willard] as privileged. R&R at 16.
>
> 8. The government's distribution of privileged calls to Renzi's co-defendants. R&R at 16.
>
> 9. The government's failure to inform the Supervising Court of calls which were monitored and recorded in violation of Renzi's attorney-client privilege. R&R at 16.
>
> 10. The failure to seal all calls and seek direction from the Supervising Court at the conclusion of the interception, pursuant to 18 U.S.C. § 2518(8)(a). R&R at 16.

11. The failure of the government at the outset of the wire to notify the Court of Renzi's representation by multiple counsel. R&R at 17.

12. False statements in the ten-day reports, to include statements as to Baier's status, the minimization of calls with other attorneys, the omission of the statement [in an untranscribed call] that Baier was Renzi's personal attorney, and the omission of the taint attorney's initial conclusions [from the second and third ten-day reports]. R&R at 18.

(Taint Attorney's Sealed Proposed Findings of Fact in Further Support of the Government's Objections to the Findings and Recommendation on the Motion to Dismiss the Indictment . . . (doc. 610/612) (Taint Attorney's Objection) at 2).

## UNITED STATE'S OBJECTIONS

The Government admits mistakes were made, but asserts that "nonetheless, the record makes very clear that the interception procedures were reasonable, professional, and effective, and that the prosecutors acted in good faith in all of their representations to the Supervising Court." (Government's Objections (doc. 604) at 1-2.) The Government argues the Magistrate Judge erroneously recommended the extraordinary remedy of suppressing all the wiretap evidence, and the Court should only have suppressed the privileged evidence. *Id.* at 24. The Government argues it acted reasonably to minimize communications it inadvertently intercepted of non-Baier attorney calls from Kramer and Willard, *id.* at 28-31, and it was reasonable to use a taint team to review the intercepted Baier attorney calls, *id.* at 31. Regardless of any error, the interceptions of these privileged communications were "a small window of the overall interception period." *Id.* at 26. Because the privileged interceptions were kept to a practical minimum, the extraordinary remedy of full suppression was not warranted because it should only be used when the violations of a warrant's requirements are so extreme that the search is essentially transformed into an impermissible general search. *Id.* at 27 (citing *United States v. Mittelman*, 999 F.2d 440, 444 (9th Cir. 1993)).

## RENZI'S OBJECTIONS

The Defendant argues that the Government's deliberate targeting of privileged calls supports the Magistrate Judge's recommendation for a broad suppression of all the wiretap evidence. Defendant argues the Government intentionally or at least recklessly disregarded

Title III requirements, which warrants total suppression. The Government's proposal to suppress only the privileged evidence is no remedy at all. Even suppression of all the wiretap evidence will not remedy the Government's unlawful conduct because the Government, including the prosecution team, has had access to the privileged information which led to the indictment of Codefendant Beardall and has provided insight into possible defenses Renzi may make at trial. This violates his Fifth and Sixth Amendment rights. Additionally, the Defendant argues the Magistrate Judge mis-allocated the burden of proof on these claims because the Government, admittedly, was exposed to privileged materials, and therefore, it bears the burden of proving non-use. The Defendant seeks disclosure by the Government of documents showing any use of the privileged calls, an order compelling the Government's attorney, Mr. Restaino, to testify, or the Court should find an adverse inference from his refusal to testify and hold a *Kastigar* hearing to resolve this question. The Defendant asks the Court to dismiss the SSI or the affected counts, or alternatively to suppress the wiretap and the fruits of its poisonous tree, which include the evidence seized during the search of Defendant Renzi's insurance company or at a minimum hold further hearings to determine the scope of the fruits resulting from the unlawful wiretap.

## FINDINGS OF FACT

The Court agrees with the Magistrate Judge's finding that the affidavit supporting the wiretap Order expressly provided for minimization of all attorney-client privileged conversations, (Evidentiary Hearing, 6/17/2009, Gov't Ex. 40: Odom Affid. ¶¶100-101, 106), and all such recordings would be securely preserved, with logs showing the date and time of calls, parties involved, the subject of the call, and if and when minimization occurred, *id.* ¶ 102.

The minimization provisions were distinct from the taint team provisions described for conversations that might contain information covered by the Speech or Debate Clause privilege, which were as follows: "the monitor will stop listening, and the remaining conversation will be recorded but not reviewed, placed in an envelope and sealed pending a review by an independent group of investigators and/or prosecutors . . . ." *Id.* ¶ 105(c).

As the Magistrate Judge noted, before monitoring would commence, written instructions were issued to the FBI agents assigned monitoring duties articulating the current policies and considerations in maintaining lawful standards for minimization, particularly what kinds of conversations would be regarded as privileged between lawyer and client. *Id.* ¶ 103. (Evidentiary Hearing, 6/17/2009, Gov't Ex. 38: Memorandum at 11.) Agents were instructed:

> **Unless otherwise addressed in this memorandum,** never knowingly listen to or record a confidential conversation between a person and his or her attorney when other parties are not present. Anytime that an attorney or law office employee is a party to a conversation, call the agent supervising the interception – . . . If it is determined that a conversation involving an attorney constitutes confidential legal consultation of any kind, notify the agent supervising the interception, shut off the monitor and stop recording. . . . .

*Id.* The memorandum identified the following attorneys as Renzi's lawyers: William J. McGinley and Benjamin L. Ginsberg from Patton Boggs, LLP, a Washington, D.C. law firm in the FEC investigation and criminal attorney Grant Woods. The memorandum instructions were as follows: "Any time that the above-referenced lawyers or firms are parties to a conversation, the monitoring personnel should assume that the conversation is privileged, shut off the monitor and stop recording immediately." *Id.*

There is no mention of attorney Maria Baier in the memo. She had, however, contacted the United States Attorney, Paul Charlton, on October 23, 2006, to complain about Renzi's opponent, who was publically alleging that the FBI was going to indict Congressman Renzi. (Evidentiary Hearing, 6/17/2009, Gov't Ex. 6: Memo to file.) Congressman Renzi had made a similar call on October 20. *Id.* Ex. 5: Memo to file.

The wiretap began on October 27, 2006. Four calls from Maria Baier were intercepted, 1982, 1997, 2032, and 2035. The Government recorded all of the first three of Ms. Baier's conversations with Renzi without minimization, except the third call was minimized when Grant Woods and Tyrone Mitchell joined the call. The fourth call was minimized after six of the eight minute long conversation. The first two conversations with Ms. Baier were classified as pertinent and transcribed for prosecution team review. In the second call, 1997, Defendant Renzi told Ms. Baier to "please put a note for our defense, for

our legal defense." In the third call, 2032, Ms. Baier told Defendant Renzi that she was an attorney licensed to practice in Arizona and he characterized her as his "personal attorney." (R&R at 4-5; Taint Attorney's Objection at 6 ¶12.) This call was not classified as pertinent and not transcribed. The fourth call was the same, but minimized after six minutes. (Evidentiary Hearing, 6/18/2009, Taylor, TR at 15.) During this call, Agent Taylor was informed of the Baier Rule. *Id.* at 55.

Following the third call, the Government implemented the so-called "Baier Rule" because it could not determine whether Ms. Baier was serving as an attorney for Defendant Renzi or as a member of his day-to-day "operations group." The "Baier Rule" preserved the intercepts between Ms. Baier and Mr. Renzi in the event that she was not his attorney, while simultaneously seeking to ensure that the prosecution team was not exposed to privileged communications in the event that Ms. Baier was in fact Mr. Renzi's attorney. (Taint Attorney's Objection at 3.) Correspondingly, the ten-day wiretap reports submitted to the Supervising Court explained that taint team review was being used for calls "between Renzi and an unlicensed law-trained political operative who may be assisting the attorneys in the provision of legal advice." (Evidentiary Hearing, 6/17/2009, Gov't Ex. 25: First Report dated 11/6/2010; Ex. 26: Second Report dated 11/15/2010; Ex. 31: Third Report dated 11/27, 2010.)

The Government's position was not supported by the facts. On the very first day of the wiretap, October 27, 2006, the Government intercepted conversations that reflected Maria Baier was an attorney representing Defendant Renzi. An agent accessed the Arizona State Bar's public website and determined that Maria Baier was a licensed attorney and printed a copy of her profile from the website. It was placed in a folder and placed in a file cabinet near Agent Odom's desk, never to be seen again until just before the start of the evidentiary hearing before the Magistrate Judge. On October 30, 2006, prosecuting attorney Restaino asked his colleague, AUSA Roetzel, to act as a taint attorney and told Roetzel that Baier was a "long-time political operative" and that a review of the hard and electronic Bar directories reflected she was not a licensed attorney, although, she claimed to be an attorney.

The Baier intercepts, except for the most telling one, 2032,[1] were sent to the taint attorney. (Renzi's Objections at 5; Evidentiary Hearing, 7/16/2009, Roetzel, TR at 211.)  On November 6, 2006, Roetzel advised Restaino that an attorney-client relationship existed between Maria Baier and Defendant Renzi, and the calls were privileged.  (R&R at 6.) Nevertheless, the Government did not discontinue the "Baier Rule," and it continued to represent to the Supervising Court in every ten-day report for the duration of the 30-day wiretap that she was an unlicensed law-trained political operative.

The Government admits that after it intercepted the Maria Baier calls on the first day of the wiretap, it recorded 37 telephone calls between Defendant Renzi and his attorney Maria Baier.  (Taint Attorney's Objection at 8.)  The Magistrate Judge also found that the Government failed to minimize two attorney-client conversations (2997, 3295) between Defendant Renzi and Glenn Willard and one conversation (3084) between Renzi and Kelly Kramer.  In all of these calls, agents were on notice that these attorneys represented Defendant Renzi.  It became clear during the conversations that these calls involved attorney-client privileged conversations.  Agents failed to minimize the calls 2997 and 3084, or belatedly minimized call 3295.  The calls were transcribed and/or synopsized.  (R&R at 7-8.)

After admitting that in call 2182, "somebody says Kelly Kramer and Laurie Miller represent – from Nixon Peabody represent Rick Renzi," (Taint Team Objection at 17), the Government defends interception of call 3084 by arguing that "the record [] does not reflect that Agent Taylor was on actual notice that Mr. Kramer was an attorney when he was monitoring Session 3084."  *Id.*  Agent Taylor attests he did not recall monitoring that call or another call where Defendant Renzi said Kelly Kramer would call him, and Agent Taylor did not recall being made aware that Kelly Kramer was identified as Mr. Renzi's lawyer.  *Id.*

_____

[1]This oversight may have occurred because call 2032 was classified as nonpertinent, whereas, the other three Baier calls intercepted that day were classified as pertinent.

The Court rejects this position. Agent Taylor should have known Kelly Kramer was Mr. Renzi's attorney because call 2182, which was recorded on the fourth day of the wiretap, established this fact. Thereafter, Kelly Kramer's name should have been posted on the automatic-minimization list for every agent, including Agent Taylor to see while monitoring the wiretap.

The Government concedes that it should not have recorded the Willard-Renzi conversation 2997, and Agent Dillender, who was the monitoring agent should not have listened to it, should not have written a synopsis of the call, and should not have passed the information on to the next shift. Additionally, call, 3295, with attorney Willard was not immediately minimized, but was monitored for several minutes before the agent concluded it should be minimized. This call was classified pertinent, transcribed and provided to the prosecution team.

As the Magistrate Judge correctly found, "[n]one of the privileged calls, including the 'taint' calls, were ever sealed or marked as privileged, in violation of DOJ's own electronic surveillance manual." While synopses and transcripts were deleted and shredded, agents retained copies of the privileged calls on compact discs that were stored, unlocked, on desks. (R&R at 9.) Because privileged calls were never sealed or even segregated, several were produced to Renzi's co-defendants, including an hour-long legal conference call. As late as July 2009, when Agent Dillender was prepared for the evidentiary hearing before the Magistrate Judge, Agent Radtke listened to call 2997.

Additionally, and most importantly, the Government failed to inform the Supervising Court that it had special taint team procedures for intercepting privileged attorney-client communications between Defendant Renzi and Maria Baier and failed to inform the Court that it had intercepted other attorney-client privileged communications. Instead, it reported to the Supervising Court that all attorney-client communications had been minimized and Maria Baier was an unlicensed law trained political operative. These misrepresentations precluded the Supervising Court from precluding interceptions and from ensuring that

- 9 -

proper procedures were in place to address intercepted attorney-client calls once they

occurred.

The Magistrate Judge made the following findings in respect to the reasonability of

the Government's conduct, as follows:

> . . . as to the non-Baier calls, the government adopted reasonable procedures
> to assure compliance with the minimization requirement. The Magistrate
> Judge further finds that the government acted reasonably, and in good faith, to
> minimize all privileged calls with the following exceptions: the government
> acted unreasonably by: 1) failing to direct the minimization of the Baier calls
> after Renzi identified Baier as his "personal attorney" and government
> investigation revealed that she was a licensed attorney, 2) failing to direct the
> minimization of the Baier calls after Roetzel determined that the Baier calls
> were privileged, 3) Agent Dillender's failure to minimize Call 2997 with
> Glenn Willard, and, 4) the failure to immediately minimize the call with Kelly
> Kramer, despite Renzi's identification of him in earlier calls as his attorney.

(R&R at 16.)  The Court agrees further:

> [I]n addition to failing to act reasonably to minimize those calls, the
> government also acted unreasonably by 1) failing to designate any of the
> privileged calls as privileged, which would have restricted the number of
> agents who had access to those calls, 2) Agent Dillender's recording,
> monitoring, synopsizing and designation of Call 2997 as pertinent, when it
> was clearly privileged, 3) the failure to designate the recorded portion of Call
> 3295 as privileged and the review of this call by prosecutors, 4) the
> distribution of privileged calls to Renzi's co-defendants, 5) the failure to
> inform the Supervising Court of calls which were monitored and recorded in
> violation of Renzi's attorney-client privilege, and 6) the failure to seal all calls
> and seek direction from the Supervising Court at the conclusion of the
> intercept pursuant to 18 U.S.C. § 2518(8)(a).

*Id.*

The Court agrees with the Magistrate Judge that these aspects of the wiretap were

unreasonable.  The Government does not object to the Magistrate Judge's recommendation

to suppress the unlawfully collected privileged evidence, but objects to suppression of the

entire wiretap. *Id.* at 18.  The Government argues the violations "address a small window of

the overall interception period."  (Government's Objection at 26.)  "Minimization requires

that the government adopt reasonable measures to reduce the interception of conversations

unrelated to the criminal activity under investigation to a practical minimum while

permitting the government to pursue legitimate investigation." *Id.* at 25 (citing *United

States v. Torres*, 908 f.2d 1417, 1423 (9th Cir. 1990)).

The Government submits that of the 1,270 intercepted communications, 52 were attorney calls of which 41 involved Maria Baier, and there were 11 other non-Baier calls involving attorney-client privilege. Because the Court finds that the Government knew Maria Baier was Defendant Renzi's attorney after the first three calls were intercepted on the first day of the wiretap, the Government illegally recorded, without any minimization 37 attorney-client privileged conversations. According to the Magistrate Judge, the Government unreasonably intercepted 2997, 3084, and part of 3295. In other words, the Government got it right 12 out of 52 times. But the percentage of privileged conversations is not a sure guide to the answer in a suppression case. *See e.g., Scott v. United States*, 436 U.S. 128, 140 (1978) (discussing why high percentage of intercepted nonpertinent calls does not necessarily mean the wiretap was unreasonably conducted). Higher numbers may reflect a wiretap of long duration or "when the investigation is focusing on what is thought to be a widespread conspiracy more extensive surveillance may be justified in an attempt to determine the precise scope of the enterprise." *Id.* This same logic applies "[d]uring the early stages of surveillance [when] the agents may be forced to intercept all calls to establish categories of nonpertinent calls which will not be intercepted thereafter." *Id.* at 141. The Court noted that "[i]nterception of those same types of calls might be unreasonable later on, however, once the nonpertinent categories have been established and it is clear that this particular conversation is of that type." *Id.*

The Government asserts that application of the objective standards set out in *Scott* results in a finding of reasonability. (Government's Objection at 23-31.) The Court rejects the Government's conclusion under *Scott* and finds the Magistrate Judge properly applied the law. (R&R at 12 (citing *Scott*, 436 U.S. at 139-41)). The Court has no hesitation in finding that the Government knew or should have known at the end of the first day of the wiretap that interceptions of conversations between Defendant Renzi and Maria Baier were covered by the attorney-client privilege. This finding is supported by the Government's taint attorney's opinion on November 6, 2006, and memorialized in writing on November 24, 2006. The Court rejects the Government's assertion that the Baier Rule was reasonable.

The same goes for the Government's interception of call 3084 with attorney Kramer, who was unequivocally identified as being one of Defendant Renzi's attorneys by the fourth day of the wiretap, and attorney Willard, who's privileged conversation was admittedly recorded, transcribed and synopsized without any excuse.

The Court agrees with the Magistrate Judge that by recording attorney-client privileged conversations the Government seized evidence beyond that authorized by the wiretap, which required such evidence to be minimized, and that by this conduct the Government acted unreasonably in executing the wiretap. More importantly, the Government chose to conceal from the Supervising Court that it was recording, albeit for taint team review, and not minimizing attorney-client privileged conversations. The Government also failed to disclose the other non-Baier attorney-client privileged interceptions, which violated the DOJ's Electronic Surveillance manual requirement for prompt notification to the supervising court whenever a privileged communication is intercepted. (R&R at 12.) Like the Magistrate Judge this Court finds that the Government violated Title III by breaching its duty of candor to the court. *Id.* (citing *United States v. Lopez*, 300 F.3d 46, 55 (1st Cir. 2002). The Government's conduct, in its totality, warrants a more significant sanction than just suppressing the privileged evidence. The Court suppresses the wiretap.

## CONCLUSIONS OF LAW

The Court adopts the law applicable to Title III and the Fourth Amendment as set out in the R&R, without exception. The Court finds *Simels* discussion of Title III minimization requirements especially helpful. *United States v. Simels*, 2009 WL 1924746 (E.D. N.Y. 2009). In *Simels*, the district court reviewed a wiretap of an attorneys' visiting room at a correction center based on the government's belief that the attorneys were part of the same criminal conspiracy as their clients. The court addressed a post-interception minimization process analogous to the one used here, which in *Simels* yielded hours of nonpertinent and privileged conversations but only a few minutes of pertinent, nonprivileged conversation. Relying on Title III, 18 U.S.C. § 2518(5), the court noted that "every order . . . shall contain

- 12 -

a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." *Id.* at * 3. The only provision in Title III allowing post-interception minimization pertains to intercepted communications in code or foreign language, when an expert interpreter is not reasonably available during the interception. 18 U.S.C. § 2518(5).

The court held that "[b]y definition, an agent cannot minimize the *interception* of communications that should not be intercepted by intercepting all communications and sorting them out later." *Simels*, 2009 WL 192476 at * 3. The court found the Supreme Court's objective reasonableness Fourth Amendment standard similarly focused on minimizing interception. *Id.* at * 6.

The judge concluded, "the thrust of this legislative history is that when it is impossible to minimize the interception of non-pertinent communications, special steps must be taken to minimize their dissemination." *Id.* at *4. Here, the reason for taint team review under the Baier Rule was to determine whether she was Defendant Renzi's attorney or a political operative. The necessity for the taint team ended once this was determined and there was no reason for further continued taint team review of her calls. There was no suspicion that she was involved in the offenses under investigation. There was simply no reason for the Baier Rule after the first day of the wiretap. This Court agrees with Defendant Renzi that liberal use of taint teams should be discouraged because they present "inevitable and reasonably foreseeable risks that privileged information may be leaked to prosecutors." (Renzi's Objection at 25 (citing *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006)). "That is to say, the government taint team may have an interest in preserving privilege, but it also possesses a conflicting interest in pursuing the investigation, and, human nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations." *Id.*

The Government argues that there is no evidence of such a breach in this case, and the Baier Rule interceptions deemed unreasonable by the Magistrate Judge were minor and insufficient to convert the wiretap into an impermissible fishing expedition. The

Government relies on *United States v. Mittelman*, which is a search warrant case where the Government seized evidence from a law office. *United States v. Mittelman*, 999 F.2d 440 (9th Cir. 1993). The district court suppressed all evidence because agents seized entire contents of files, failed to follow proper sealing procedures, and perused the indexes of computer files and seized a number of computer disks. *Id.* at 442. The district court held the search was beyond that authorized by the warrant, which required documents be reviewed by a magistrate judge if they could not feasibly be sorted on site. The court of appeals reversed and remanded for a determination as to whether the breadth of the search converted it to an impermissible general search, i.e., an indiscriminate fishing expedition. If not so extreme, the district court should suppress only the evidence seized in violation of the warrant. Here, the Baier Rule was more akin to a fishing exercise because taint team review was wholly unnecessary to minimize interception of privileged attorney-client calls after the first day of the wiretap.

This same procedure, condemned here as an unreasonable interception, nevertheless, saves the day for the Government in respect to Defendant Renzi's Motion to Dismiss the SSI. It prevented the prosecution team from being exposed to the bulk of the privileged calls at issue in the case. The Court agrees with the Magistrate Judge's conclusion that "[t]he taint team did not feed any information back in the instant case, and as a result there was, simply put, no intrusion as to the Baier taint calls." (R&R at 21.)

In addition to the unreasonable interception of all Maria Baier calls under the Baier Rule, the Magistrate Judge found the wiretap was unreasonable in its failure to "designate any of the privileged calls as privileged, which would have restricted the number of agents who had access to those calls,"and unreasonable as to "Agent Dillender's recording, monitoring, synopsizing and designation of [the Willard] Call 2997 as pertinent, when it was clearly privileged," and "the failure to seal all calls and seek direction from the Supervising Court at the conclusion of the intercept[ion] . . . ." (R&R at 16.) The Court finds that even if agents had access to privileged interceptions, the prosecution teams' exposure was limited by deleting the synopses for the Willard (2997) call intercepted by Agent Dillender and the

Kramer (3084) call intercepted by Agent Taylor and shredding the transcript of the Dillender (2997) call.

The Magistrate Judge found that the prosecution team only reviewed the recorded portion of a call with attorney Willard, call 3295, before it was minimized because it was designated as pertinent and not designated as privileged. (R&R at 16.) The prosecution team consisted of FBI Special Agents Odom and Burris and prosecuting attorneys Senior Trial Attorney John Scott and Assistant United States Attorney Gary Restaino. The remainder of the players were FBI agents responsible for monitoring the wiretap, with Agents Radtke and Dillender supervising the operation. It is undisputed that Agent Tjernagel, assigned as a monitoring agent at the time of the wiretap, was later promoted to the prosecution team "even though he monitored multiple privileged calls (Calls 1982, 1997, 2032, and 3084) and listened to privileged calls (Calls 2032 and 2067)." (Renzi's Objection at 27.) "Still more egregious, Agent Tjernagel was selected to lead the insurance investigation even though he personally handled a transcript of Call 2997, even though he was exposed to a synopsis of the call while serving as a monitor, and even though he kept a copy of the call, unlocked, at his desk." *Id.* As the Magistrate Judge noted Agent Tjernagel was one of the agents, who in addition to Agent Radtke, kept compact disks on their desks with copies of all the wiretap calls, including the non-Baier privileged calls at issue here, which were not locked, sealed, nor even designated as privileged. (R&R at 9.)

Defendant Renzi argues the Magistrate Judge wrongly concluded privileged information did not reach the prosecution team. The Defendant argues "[w]hen the government obtains privileged information during a criminal investigation, it bears the burden of proving that those communications did not influence the nature or scope of its investigation. *Id.* at 34 (citing *United States v. Danielson*, 325 F.3d 1054, 1074 (9th Cir. 2003)). "'Once the investigatory arm of the government has obtained information, that information may reasonably be assumed to have been passed on to other governmental organizations responsible for prosecution.'" *Id.* (quoting *Briggs v. Goodwin*, 698 F.2d 486, 495 (D.C. Cir. 1983)). Thus, because the Government elected to use a taint team to review

- 15 -

potentially privileged documents, it "'bears the burden to rebut the presumption that tainted material was provided to the prosecution team.'" *Id.* (quoting *United States v. Neill*, 952 F. Supp. 834, 841 (D.D.C. 1997)); *see also, United States v. SDI Future Health, Inc.*, 464 F. Supp. 2d 1027, 1040 (Nev. 2006). Consequently, Defendant Renzi argues that the question must be addressed in a *Kastigar*-like hearing. *Id.* (citing *In re Grand Jury Subpoenas*, 454 F.3d 511, 523 (6th Cir. 2006)). Defendant complains that the Magistrate Judge did not consider these cases.

*Danielson* raised a Sixth Amendment problem where the Government's confidential informant obtained and communicated to the prosecution team, including the prosecuting attorney, defendant's trial strategy. *Danielson*, 325 F.3d at 1069. The Sixth Amendment right to counsel attaches when the government initiates adversarial proceedings; "once indicted a defendant has a right to rely on his counsel as a 'medium' between himself and the government." *Id.* Relying on the Supreme Court's rejection of a *per se* rule that the Sixth Amendment is violated whenever the prosecution knowingly arranges or permits intrusion into this attorney-client relationship, the Ninth Circuit carved out an exception to the general rule that there is no Sixth Amendment violation unless the defendant shows there is actual prejudice. *Id.* at 1069-70.

In *Danielson,* the Ninth Circuit held that where wrongful intrusion results in the prosecution obtaining the defendant's trial strategy, the question of prejudice is more subtle and warrants shifting the burden which is usually on the defendant to the Government. *Id.* at 1070. Rejecting the *Briggs per se* approach that mere possession of improperly obtained trial strategy information by the prosecution constituted proof of prejudice, the Ninth Circuit established a two-step analysis: 1) the government must have acted affirmatively to intrude into the attorney-client relationship and thereby to obtain the privileged information, and 2) "once this *prima facie* case has been established the burden shifts to the government to show that there has been . . . no prejudice to the defendant [] as a result of these communications." *Id.* at 1071 (citations omitted). It was in this context that the court suggested a *Kastigar*

hearing.[2]  *Id.* at 1072.  Defendant Renzi argues that while *Danielson* is a Sixth Amendment case, it applies in the pre-indictment context.  (Renzi's Objection at 34 (citing *Danielson*, 325 F.3d at 1069)).

In *SDI Future Health*, the government seized business records and used a taint team to review the documents to identify attorney-client privileged records instead of submitting them for *in camera* judicial determination.  The district court agreed generally that when the government chooses to take matters into its own hands instead of relying on neutral judicial review, it bears the burden to rebut the presumption that tainted material was provided to the prosecution.  *SDI Future Health*, 464 F. Supp. 2d at 1040.  The court held the presumption can be rebutted with a showing that procedures are in place to prevent such intragovernmental communications.  *Id.*  This does not support Defendant's argument for a *Kastigar* hearing.

In *SDI Future Health*, the court did not consider defendant's Sixth Amendment claim because the alleged violation was pre-indictment and held that in the face of Ninth Circuit authority, *Neill's* suggestion that the Sixth Amendment applies to pre-indictment seizures of attorney-client communications is incorrect.  *Id.* at 1048 (citations omitted).  The court rejected defendant's due process claim under the Fifth Amendment to dismiss the indictment because there was no showing of governmental misconduct so outrageous as to shock the conscience of the court.  In the Ninth Circuit, the governmental conduct of deliberately intruding into the attorney-client relationship and the prejudice suffered by the defendant must be very severe to violate the Fifth Amendment.  *Id.* at 1049.

The cases relied on by Defendant Renzi do not support his assertion that a *Kastigar* hearing must be held whenever there is evidence that the government has obtained privileged attorney-client evidence. Such a rule would require use of taint teams routinely to

---

[2]Defendant Renzi's reliance on *In re Grand Jury Subpoenas*, another Sixth Circuit case, is misplaced on dicta which simply repeats the government's argument in that case for using a taint team, which was that the taint team would have an interest in properly screening attorney-client privileged material because leaking privileged material to the investigative team raises the specter of a *Kastigar*-type hearing.

prevent any and all taint, and necessarily defeat the Defendant's assertion that use of the taint team here was unreasonable. The cases do not support Defendant's assertion that because the Government used a taint team the Court must presume privileged attorney-client communications reached the prosecution. This is certainly not the law in the Ninth Circuit, which expressly rejects such a *per se* rule. The law is as applied by the Magistrate Judge. Defendant must show outrageous Government conduct, which lead to it obtaining privileged attorney-client information, and the information actually prejudiced the Defendant.

There is simply no evidence in this case of whole-sale egregious access by the prosecutor to privileged attorney-client communications, even if the calls were of a type that would prejudice the defendant. The first of the Maria Baier calls, intercepted on the first day of the wiretap, were reviewed by prosecutors, but the Baier Rule ensured that subsequent calls remained with the taint team. The other attorney calls the Court found to be unreasonably intercepted by agents were intercepted inadvertently and in all but one instance remained with the agents monitoring the wiretap. Specifically, the Willard (2997) call remained with Agent Dillender because the synopsis was deleted and the transcript shredded. The second Willard (3295) call was minimized after a few minutes, when it became clear from the content of the call that it involved attorney-client privilege. The prosecution team admittedly reviewed this call. The synopsis reflects the call began with discussions involving the media and was minimized when it moved to legal discussions of the FEC case. The Kramer call (3084) was never transcribed and the synopsis was deleted. Except for the first two Maria Baier calls and the few minutes of the Willard call, there is no evidence that the prosecuting attorneys had access to privileged attorney-client calls.

The Defendant is, however, correct that there is evidence that monitoring agents had access to privileged calls. There is also evidence that there was no "Chinese wall" between monitoring agents and investigating agents. Agents moved between monitoring the wiretap and assisting in the investigation by doing witness interviews and taking statements, exercising the search warrant, etc. (Evidentiary Hearing, 7/16/2009, Odom TR at 83-89.) The most problematic access question involved the storage of all the calls, including

privileged calls, on compact disks that were not sealed and were kept in unlocked drawers in two agents' desks, one being Agent Tjernagel, who later became a member of the prosecution team after the wiretap was completed. The Defendant argues that Agent Tjernagel monitored privileged Maria Baier calls including those made on the first day of the wiretap, 1982, 1997, 2032, and 2035 and accessed and listened to other Maria Baier calls. (Renzi's Objection at 19), *see also* (R&R at 9 (finding the evidence supports Renzi's contention that monitoring agents accessed 15 calls that had been recorded for taint review)). Agent Tjernagel admittedly monitored attorney Kramer's call 3084. (Renzi's Objection at 19.)

This Court has already concluded the Maria Baier calls 1982 and 1997 did not reveal she was Defendant Renzi's attorney, and it was not until call 2032 that the Government should have known this. Interception of these calls was clearly inadvertent and neither unreasonable nor outrageous. Agent Tjernagel was in the wiretap room when the Kramer call 3084 was intercepted and it was played over the speakers so that Agent Tjernagel heard the call. (Evidentiary Hearing, 7/16/2009, Tjernagel, TR at 11.) This call, like call 2997 with attorney Willard, was intercepted inadvertently. The Court agrees with the Magistrate Judge's conclusion that while these interceptions were unreasonable, they were not outrageous.

The Court also finds that these interceptions were not accessed by the prosecution team. Agent Tjernagel, who was a monitory agent and would later become part of the prosecution team, testified that he never discussed with anyone other than Agent Taylor the Kramer call 3084, *id.* at 13, and he had no independent recollection of the call, *id*. at 14. The Court finds that he did not communicate the substance of this call to the prosecution team.

Agent Tjernagel's involvement with the Willard call 2997 was limited to his responsibility in respect to non-Baier calls to transfer all pertinent calls from the voice box system to the server computer, which he did by identifying the calls by number, then from the server computer he burned them all onto one master CD, and then burned each call file

onto its own separate CD and sent it for transcription. The monitoring agents, including Agent Tjernagel, were responsible for reviewing the transcriptions with the CD recordings and making any necessary corrections. Eventually, the final transcripts were uploaded to a computer, the drafts shredded, and the original CD and subsequent individual CDs were stored in his desk, which was unlocked. *Id.* at 17-19.

When Special Agent Odom, who was part of the prosecution team, informed Agent Tjernagel that the Willard call 2997 was not pertinent, Agent Tjernagel retrieved the CD and draft transcript from the transcript review box, shredded the transcript and placed the CD in his desk. He was not told that the intercepted call was privileged only that it was non-pertinent. *Id.* at 70-75.

Except to the extent Agent Tjernagel heard the Maria Baier calls made on the first day of the wiretap, his involvement with the remaining Maria Baier calls was limited to transferring them from the voice box system to the server computer, which he did by identifying the calls by number, and then burning a CD of the calls. He would place Maria Baier's name on the CD, place it in a case, and give it to Supervising Agent Radtke to give to the taint team. *Id.* TR at 23.

Agent Tjernagel never accessed or listened to the CDs after they were secured in his desk. *Id.*

Agent Tjernagel admitted to hearing discussions between Agents Odom, Burris and whichever prosecutor was there on the first day of the wiretap as to whether or not Maria Baier was an attorney. *Id.* at 53. He was emphatic that they discussed it, not him, *id.*, and these discussions occurred up to the time when the Baier Rule was implemented. *Id.* at 87. He also testified that as a monitoring agent, he was not privy to the decisions, discussions, and preparations for the search warrant for Defendant Renzi's insurance company. *Id.* at 67, 69. He never learned any substantive information about the taint team calls or whether any taint team material was used in the course of the investigation. *Id.* at 100. He had no knowledge of whether the Kramer call was discussed formally or informally by the prosecution team. *Id.* at 102. The same went for the Willard calls. *Id.*

- 20 -

The Court rejects the Defendant's argument that the Magistrate Judge erred by denying him access to the privileged recordings and by not compelling the testimony of prosecuting attorney Restaino. The Court finds the record, especially the testimony from Agents Tjernagel, Burris and Odom, sufficient to support the conclusion that privileged attorney-client information was not communicated to the prosecution team.

Like Agent Tjernagel, at the time of the wiretap, Agent Burris was not on the investigative team and was not a co-equal with Agent Odom. (Evidentiary Hearing 7/16/2009 Burris TR at 13.) Agent Odom was responsible for supervising the wiretap for the prosecution team and Agent Radtke was responsible for supervising the agents monitoring the wiretap.

Defendant presents evidence that the monitoring agents were not walled off from agents conducting the investigation, (Evidentiary Hearing, 7/16/2009, Odom, TR at 83), but it is clear that privileged interceptions by monitoring agents did not reach the prosecution team: Agent Odom and the attorneys. Specifically, Agent Odom testified that calls were classified as pertinent or non-pertinent by the monitor. *Id.* at 54. Only calls classified as pertinent were brought to his attention by Agent Radtke. *Id.* He did not receive non-pertinent calls, *id.* at 55, or Maria Baier calls, *id.* at 57. At the beginning of every day, Agent Radtke would go to the Title III room and obtain the pertinent calls from the previous day, the ones Agent Odom had not received yet, and provide summaries of the calls to Odom. *Id.* Agent Odom also received the final transcripts of the pertinent calls. *Id.* at 55.

In the two instances where monitors intercepted privileged attorney-client calls, both the Kramer, 3084, and Willard, 2997, calls were classified by the monitoring agents as pertinent, but when the interceptions were brought to the attention of Agent Odom, he had the classifications changed to nonpertinent to preclude all review by the prosecution team. In respect to the Willard call, 2997, Agent Odom testified that "to prevent the potential [] disclosure of any information relating to the conversation to be coming to me or to anyone else, I directed Mr. Morton to change the classification [to nonpertinent] and to delete the synopsis, not the recording, . . . ." *Id.* at 59. When the Kramer call 3084 came to his

- 21 -

attention, Agent Odom directed the classification change to nonpertinent and for agents to delete the synopsis of the call so that neither he nor anyone else would be exposed to it. *Id.* at 61. Agent Odom testified that inadvertently intercepted attorney-client calls were brought to his attention so he could take necessary measures, such as classifying the call as nonpertinent and ordering deletion of the synopsis or shredding of the transcript, to ensure neither he nor anyone else obtained the call information. *Id.* at 109-121. In this way he prevented an "oh shoot" moment, which would have occurred if the attorney-client privileged call had been transmitted to the prosecution team. *Id.* at 111.

The Court agrees with Magistrate Judge Velasco that there is no evidence the prosecution accessed privileged attorney-client material, except for the first two Maria Baier calls, 1982 and 1997, and two minutes of the call with attorney Willard, 3084, before it was minimized. (R&R at 21.) In other words, there were three "oh shoot" moments. "Of these, Agent Odom credibly testified that the government made no use of any information derived from calls 1982, 1997 and 3084 in the insurance investigation, the search warrant or any other part of the investigation." *Id.* at 22; *see also* (Evidentiary Hearing, 7/16/2009, Odom, TR at 28-29, 31-32, 34-35, 51, 66-67, 135, 141). "Agent Odom credibly testified that the insurance investigation was active and well developed before the wiretap, but that, because of the covert nature of the investigation, he did not actively pursue potential witnesses at that time." *Id.* at 22-23, *see also* (Evidentiary Hearing, 7/16/2009, Odom, TR at 63 (explaining that with the wiretap, the team had exhausted covert operations and were moving to overt operations, such as interviews, grand jury subpoenas, and the search warrant for Patriot Insurance). The focus of the wiretap was to discover if Sandlin land-deal money was going to Patriot Insurance. (Evidentiary Hearing, 7/16/2009, Odom, TR at 141-142.)

The Court is entirely confident that the prosecution team did not conduct its pre-trial investigation or develop its trial strategy with the benefit of advanced knowledge of Defendant Renzi's trial strategies. *See Danielson*, 325 F.2d at 1069 (finding 6th Amendment violation where informant intentionally solicited trial strategy from defendant post-

indictment; distinguishing *Weatherford v. Bursey,* 429 U.S. 545 (1977) , where Supreme Court found 6th Amendment not violated where undercover agent was privy to defense strategy but did not communicate anything to any member of the prosecution team).

The Court finds that the Government's conduct did not violate the Fifth or Sixth Amendments to the United States Constitution which ensure effective assistance of counsel. For the same reasons the SSI is not dismissed under the Fifth or Sixth Amendments to the Constitution, the Court denies the Motion to Dismiss the SSI pursuant to the Court's supervisory powers. (R&R at 23.) "Disqualification of the prosecutorial and investigative teams is not warranted. Furthermore, Agent Odom's testimony establishes there are no fruits from the privileged calls that would require further suppression." (R&R at 23.)

The Court agrees with the Magistrate Judge that the appropriate remedial action in this case is suppression of the wiretap. The Government conducted an unreasonable wholesale interception of calls they knew to be attorney-client communications pursuant to the Baier Rule. The Government failed in its duty of candor to the Supervising Court by not revealing the true nature of its interception of these calls under the Baier Rule. The Government failed to identify as privileged and seal attorney-client calls it inadvertently intercepted during the wiretap. While this conduct was not outrageous, it was an unreasonable violation of Title III and the Fourth Amendment and warrants the sanction recommended by Magistrate Judge Velasco.

**Accordingly,**

**IT IS ORDERED** that the Report and Recommendation (doc. # 594) is adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that the Motion to Dismiss the Second Superseding Indictment (SSI) Based on the Government's Unlawful Recording of Privileged Counsel Calls (doc. 87) is DENIED IN PART as to dismissal of the SSI and GRANTED IN PART as to suppression of all evidence obtained by the wiretap.

**IT IS FURTHER ORDERED** that this matter remains referred to Magistrate Judge Velasco for all pretrial proceedings and Report and Recommendation in accordance with the

provisions of 28 U.S.C. § 636(b). Fed. R. Crim. P. 59(b), and LR Civ. 72.1(a), Rules of Practice for the United States District Court, District of Arizona (Local Rules).

DATED this 2nd day of June, 2010.

David C. Bury
United States District Judge