IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD RENZI, JAMES SANDLIN, ANDREW BEARDALL, and DWAYNE LEQUIRE<br><br>Defendants. | NO.   CR 08-00212-TUC-DCB (BPV)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant Richard Renzi's Motion to Dismiss the Money-Laundering Counts (Counts 11-25) (Doc. 91); and Defendant James Sandlin's Motion to Dismiss Money-Laundering Counts (11-25) of the Indictment (Doc. 93).

The Magistrate Judge heard argument on the motions on December 4, 2008, and took the matters under advisement.

The Magistrate Judge having considered the briefing, arguments, and evidence presented, recommends that the District Court enter an order DENYING the motions to dismiss.

**I.   PROCEDURAL BACKGROUND**

Presently pending before this Court are Defendants Renzi's and Sandlin's motions to dismiss money-laundering charges (Counts 11-25). (Docs. 91, 93) The Government filed a consolidated response to the motions, (Doc. 129), and reply memorandum were filed by Renzi (Doc. 168) and Sandlin (Docs. 174,184).

A superseding indictment was filed on November 13, 2008, and Defendants Renzi's and Sandlin's arguments were incorporated and applied to the superseding indictment. (Doc. 268, 304)

The Magistrate Judge heard argument on the motions to dismiss Counts 11-25 on December 4, 2008, and took the matters under advisement.

On September 22, 2009, the Government filed the second superseding indictment in this action ("SSI"). (Doc. 466) The parties were directed to file supplemental briefing addressing the relevancy, if any, that the filing of the second superseding indictment had on any matter under advisement before the Magistrate Judge. (Doc. 479) The supplemental briefing indicated that the SSI would not have any impact on the arguments raised in support of, or opposition to, the motions to dismiss the money-laundering counts, as the basic structure of the SSI as to Counts 11-25 remained the same, and no changes, stylistic or otherwise, were made to the money-laundering counts. (*See* Doc. 509 at 2, 513 at 2, 511) The procedural background of this case has been throughly summarized in this Court's order addressing the issue of severance. (*See* Doc. 557).

**II.   MOTIONS TO DISMISS THE MONEY-LAUNDERING COUNTS (11-25)**

A.   Defendant's Position

Renzi and Sandlin allege that the money-laundering charges (Counts 11 through 25) must be dismissed because the SSI: (i) does not allege any facts to establish a money-laundering offense under the Supreme Court's post-indictment decision in *United States v. Santos*, 553 U.S. 507 (2008); (ii) does not allege any predicate acts of wire fraud or extortion sufficient to support a money-laundering charge; and (iii) does not allege any facts to establish that the monies involved in the alleged Section 1957 violations involved criminally derived property.

B.   Government's Position

The Government responds, arguing that the motions are premature; that criminal defendants cannot challenge the sufficiency of the evidence prior to trial. The Government asserts that the indictment properly charges Defendants with money laundering and the

available evidence will establish both that all the laundered money relates to a specified unlawful activity, and that the laundered money represents proceeds of a criminal transaction.

### C.     Indictment

The allegations in the SSI in support of the money-laundering charges are as follows:

From approximately 2001 to June 2003, Defendants Renzi and Sandlin were co-owners of Renzi Investments, which was principally engaged in developing real estate in Kingman, Arizona. (SSI, ¶ 7) In 2003, Sandlin acquired the remaining interest in Renzi Investments by remitting a cashiers check for $200,000 to Renzi, and giving Renzi an $800,000 note, promising to pay Renzi that amount in the future. (*Id*)

On April 16, 2005, Renzi was approached by a group of investors (the Aries Group) to discuss the possibility of the Congressman sponsoring a federal land exchange on its behalf. (*Id.*, ¶ 14, 25 (j)) Congressman Renzi directed the Aries' group to purchase property owned by Defendant Sandlin ("the Sandlin Property") and include that in the land exchange proposal in order to obtain the Congressman's support for their proposal in Congress. (*Id.*, ¶ 20, 25(k)) The Aries Group contracted to purchase the property for $4.6 million, placing a $1 million escrow payment into Sandlin's bank account within a month. (*Id.*, ¶ 25(n),25(p))

On May 5, 2005, Sandlin wrote a $200,000 check, drawn on The Stockmen's Bank, Kingman, AZ, and payable to Renzi Vino, Inc., an Arizona company owned by Renzi. (*Id.*, ¶ 25(q)) Renzi deposited this check into a Patriot Insurance bank account. (*Id.* ¶¶ 25 (r)) The indictment alleges, (**Count 12** of the SSI), that these funds are the proceeds of wire fraud and extortion, and that this transaction was designed to conceal and disguise the nature, location, source, ownership and control of the proceeds of unlawful activity. (Id., ¶ 43-44) The indictment also alleges that the deposit of this check into the Patriot Insurance account establishes transactions in criminally derived property. (**Count 14**[1], ¶ 46)

The indictment alleges that on May 12, 2005, Sandlin purchased a Cashier's Check

---

[1]     Counts 13-25 each allege that Defendants engaged in transactions in criminally derived property, such property having been derived from unlawful activity, specifically wire fraud and extortion.

in the amount of $77,357.42, in order to pay off Renzi's personal debt incurred in the purchase of a boat, and that this also constitutes transactions in criminally derived property. (**Count 13**, SSI ¶ 46)

In July, 2005, Sandlin agreed to extend the escrow agreement with Aries in exchange for an extension-of-escrow fee of $100,000; the indictment alleges in **Count 15** that this transfer of funds for extension of escrow constitutes transactions in criminally derived property. (SSI ¶ 25, 30, 46)

On September 30, 2005, Renzi caused a Patriot Insurance letter, addressed to Sandlin, to be faxed to the Pioneer Title Company in Sierra Vista, Arizona, falsely stating in part:

> This letter is informing you of Mr. Renzi 'calling' in the note for the Kingman property. It is his understanding you have recently sold this land, therefore the balance of the note plus interest, is due and payable. Patriot Insurance Agency, Inc. is handling this part of the former Renzi Investments.

(*Id*., ¶ 25(u)) The SSI alleges that these were false statements regarding the sale of the Kingman property and the "calling" in of the note was manufactured to hide the source of the money and thus the connection between Sandlin and Renzi. (*Id*., ¶ 36) On that same date Sandlin paid into a Patriot Insurance account the remaining $533,000 he owed to Renzi, which Renzi ultimately transferred to his personal checking account to pay for personal expenses and unpaid federal and state income taxes. (*Id*., ¶¶ 25(u)-(w), 25(y)-(aa))

The indictment does not allege that this initial transfer of the $533,000 from Sandlin to the "Patriot Insurance" account is money laundering, but thereafter alleges that Renzi's transfer of $533,000 from the Patriot Insurance account to Renzi's newly formed "Rain Whisper" account constitutes transactions in criminally derived property. (**Count 16**, SSI, ¶ 46) Thereafter, the indictment alleges one intra-bank transfer of $50,000, three intra-bank transfers of $20,000, and one intra-bank transfer of $45,000 to Renzi's personal account from the Rain Whisper account establishes six more counts of transactions in criminally derived property (**Counts 17-22**, ¶ 46)

Counts 23-25 involve the allegations of three intra-bank transfers of $325,000; initially from the Rain Whisper account to the Patriot Insurance account on January 10, 2006 (**Count 23**), from one Patriot Insurance account to another (**Count 24**) on February 10, 2006,

and on that same date from that Patriot Insurance account to Renzi's personal account (**Count 25**). (SSI ¶ 46)

**Count 11** is a conspiracy money-laundering count charging both Defendants with concealment money laundering and transactions in criminally derived property involving the proceeds of wire fraud and extortion. (SSI ¶ 31-42) The indictment alleges several predicate acts of the conspiracy including: (1) Renzi's "calling in" of the note (SSI ¶ 36); (2) Renzi's false statements in his Financial Disclosure Statements and in his personal tax returns (SSI ¶ 37); (3) Renzi's opening of a new "Rain Whisper" account using the Patriot Insurance employer identification number and making a one time only deposit of $533,000 from Patriot Insurance into the account, then making nine smaller transfers into Renzi's personal bank account totaling $200,000 over a period of three months (SSI ¶ 38); (4) Renzi's payment of his third quarter estimated taxes in the amount of $45,000 on December 8, 2005, the same day Renzi transferred funds of $45,000 from the Rain Whisper account to his personal account (SSI ¶ 40); (5) Sandlin's payment of Renzi's personal debt in the amount of $242,250 (SSI ¶ 39); and (6) Renzi's transfer of $325,000 first from the Rain Whisper Account to a Patriot Insurance Account, then from a Patriot Insurance account to Renzi's personal account for the purpose of writing checks for amended state and federal taxes. (SSI ¶ 41-42)

**III.    DISCUSSION**

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). The sufficiency of the indictment on a motion to dismiss is tested by its allegations, not facts to be shown at trial. *Las Vegas Merchant Plumbers Ass'n v. United States*, 210 F.2d 732, 741 (9th Cir. 1954). The allegations, for purposes of considering the motion, must be taken as true. *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n.16 (1952).

The SSI sets forth two money-laundering theories: concealment money laundering (Section 1956) and transactions in criminally derived funds (Section 1957). Section

1956(a)(1)(B)(i)[2] penalizes financial transactions intending to conceal the nature, location, source, ownership and control of the proceeds of specified unlawful activity, while § 1957 addresses monetary transactions involving criminally derived property exceeding $10,000 in value derived from specified unlawful activity. The meaning of "specified unlawful activity" is the same under either theory of money laundering; included in a sizeable list of such predicate acts is that of an act or activity constituting an offense listed as a racketeering activity in the Racketeering and Corrupt Organizations ("RICO") statute, 18 U.S.C. § 1961, which includes both the acts of wire fraud (18 U.S.C. § 1343) and extortion (18 U.S.C. § 1951). *See* 18 U.S.C. §§ 1956(c)(7)(A) and 1957(f)(3).

### A. *United States v. Santos*, 553 U.S. 507 (2008)

Defendants assert that the money-laundering charges (Counts 11-25) in the indictment must be dismissed because after the indictment was returned in this case, the Supreme Court dramatically restricted the scope of the money-laundering statutes by holding that the term "proceeds," as used in the federal money-laundering statute, means "profits," not "receipts." *United States v. Santos*, 553 U.S. 507 (2008). As a result, a defendant cannot violate the money-laundering statutes unless the transactions at issue involved profits from the underlying specified unlawful activity. Since the indictment fails to allege that the transactions involved criminal "profits," Defendants assert that all of the money-laundering charges must be dismissed outright.

After the initial indictment was returned in this case, the Supreme Court addressed the meaning of the word "proceeds," in the federal money-laundering statute criminalizing transactions conducted with the intent to promote criminal activity (18 U.S.C. § 1956(a)(1)(A)(i)). *See United States v. Santos*, 553 U.S. 507 (2008). Defendant Santos operated an illegal lottery for over twenty years, employing helpers, runners, and "collectors." *Id.* at 509. The runners took their commission from the wagers and handed the remaining money over to "collectors," who then delivered the money to Santos. Santos used

---

[2] Unless otherwise indicated, all statutory references to the money laundering statutes are to the 2006 edition of the U.S. Code.

the money to pay the collector's salaries and to pay off the winners of the lottery. The payments and commissions to the runners, collectors and winners of the lottery formed the basis of convictions obtained against Santos and 12 others of running an illegal gambling business as well as money laundering (§ 1956(h) and (a)(1)(A)(i)). *Id*. Santos received a 60-month sentence for the gambling charges and a 210-month sentence for the money-laundering charges. *Id.* at 510.

Santos collaterally attacked his convictions, arguing that the federal money-laundering statute's prohibition of transactions involving criminal "proceeds" applies only to transactions involving criminal profits, not criminal receipts. *Id*. The district court agreed with Santos, found that the transactions involved no profits, and vacated the money-laundering convictions. *Id*. at 510. The appellate court affirmed, and the Supreme Court granted certiorari. *Id*.

Justice Scalia, writing for a four-Justice plurality, noted that the term "proceeds" was not defined in the money-laundering statutes. *See Id.* at 511. Justice Scalia concluded that, given the term's ordinary meaning, it could mean either "receipts" (gross) or "profits," and that the context of the federal money-laundering statutes provided no special meaning for the term. *See Id.* at 511-514. Applying the "rule of lenity," the plurality concluded that the term "proceeds" must be interpreted to mean "profits." *Id*. at 514.

Of particular concern to Justice Scalia was what he termed the "merger" problem. *See Id.* at 515-16. As Justice Scalia explained,

> If "proceeds" meant "receipts," nearly every violation of the illegal-lottery statute would also be a violation of the money-laundering statute, because paying a winning bettor is a transaction involving receipts that the defendant intends to promote the carrying on of the lottery. Since few lotteries, if any will not pay their winners, the statute criminalizing illegal lotteries, 18 U.S.C. § 1955, would "merge" with the money laundering statute. Congress evidently decided that lottery operators ordinarily deserve up to 5 years of imprisonment, § 1955(a), but as a result of merger they would face an additional 20 years, § 1956(a)(1).

*Id*. at 515-16.

Justice Stevens concurred with the judgment, but determined that the meaning of "proceeds," as defined in § 1956, varied depending on the underlying predicate offense.

*Id.* at 524-526. Foreseeing the difficulty of discerning the narrow holding of the case[3], the plurality attempted to synthesize Justice Stevens' holding with their own, describing his finding that "proceeds" means "profits" when there is no legislative history to the contrary as identical to the plurality's decision. *Id.* at 523. Defendant Renzi made a similar argument in his reply and before the Court during oral argument. (*See* Doc. 168, at 3, R.T. 12/5/08, at 164-165) Justice Stevens, however, rejected this characterization of his opinion, explaining that the plurality's conclusion was not correct. *Id.* at 528. The Government also took a turn at articulating the narrow holding in the case, explaining that Justice Stevens used a definition dependent on the nature of the unlawful activity, and this holding, on its face, was limited to proceeds from illegal gambling operations. (See Doc. 129, at 6)

The Ninth Circuit recently examined Justice Stevens' analysis in an attempt to turn the "splintered *Santos* opinions into an intelligible rule of law" *See United States v. Van Alstyne*, 584 F.3d 803, 812 (2009). The Ninth Circuit's analysis in *Van Alstyne* rejects both the Defendants' and the Government's interpretations of the narrow holding of the case. The Ninth Circuit seized on the "desire to avoid a 'merger problem'" as the single unifying theme common to five justices that held that Santos' payments to winners and runners did not constitute money laundering. *Id.* at 814. Otherwise, the Court noted, "Justice Stevens' analysis diverged from that of both the plurality and the principal dissent." *Id.* The Ninth Circuit was of the view that "the holding that commanded five votes in *Santos* was that 'proceeds' means 'profits' where viewing 'proceeds' as 'receipts' would present a 'merger' problem of the kind that troubled the plurality and concurrence in *Santos*." *Id.* at 814.

This Court is bound by the Ninth Circuit's interpretation of the holding in *Santos*. Our question, then, like that in *Van Alstyne*, is whether mail fraud and extortion, are, or

---

[3] Ordinarily, when "no single rationale explaining the result enjoys the assent of five Justices," the holding is limited to the narrowest grounds supporting the result, *see Marks v. United States*, 430 U.S. 188, 193 (1977), which is in this instance the found in the opinion of Justice Stevens.

- 8 -

can be, crimes which present the 'merger' problem that was a fulcrum consideration for the *Santos* plurality and concurrence. *See Van Alstyne*, 584 F.3d at 814.

The Ninth Circuit analyzed the particular facts of that case and determined that issuing distribution checks that supposedly represented generous returns on his victims' investments in a Ponzi-type scheme was a central component of Van Alstyne's "scheme to defraud" because it inspired investors to send more money to Van Alstyne, thus it presented a "merger" problem closely parallel to the one that underlay the majority result in *Santos*, and reversed two of Van Alstyne's convictions. *Id.* at 815. The Court observed that the "profits" definition of "proceeds" should apply where the particular crime at issue depended on necessary payments, as it did in *Van Alstyne*. *Id.*

The Ninth Circuit acknowledged that not all mail fraud schemes, however, would categorically present such "merger" problems. *Id.* Observing that a "merger" problem may be triggered when multiple participants share profits, regardless of whether the predicate crime would overlap with money laundering if executed by a single criminal, at least in the context of mail fraud, the "merger" problem must focus on the "concrete details of the particular 'scheme to defraud' rather than on whether mail fraud generally requires payments of the kind implicated in *Santos*." *Id.* at 815. For example, the Ninth Circuit considered payments to another investor in response to complaints made after the scheme began to unravel. *Id.* at 815-16. The Court found that returning the entire amount to the investors undermined, rather than advanced the core scheme, as the funds would not be available to lull other investors, while, at the same time, returning the investment was intended to "promote the carrying on" (18 U.S.C. § 1956(a)(1)(A)(i)) of the scheme at the heart of the mail fraud counts, by discouraging detection of that scheme.

Thus, two important lessons from *Van Alstyne* are first, that this Court must consider "proceeds" to mean "profits" where viewing "proceeds" as "receipts" would present a "merger problem of the kind that troubled the plurality and concurrence in Santos;" and second, that this is a highly evidence dependent and fact based inquiry.

Despite Justices Scalia's and Steven's clear concern with the merger problem,

neither Defendant Renzi nor Sandlin attempted to explain how defining "proceeds" as "receipts" in this case would present a "merger" problem like that identified in Santos. Though *Van Alstyne* had not been decided at the time the first motions to dismiss were filed, or argument was heard on the motions by the Court, the *Van Alstyne* decision was handed down before the second superseding indictment, and before the parties were directed to file supplemental briefing following the second superseding indictment.

Defendant Renzi argues that, under *Santos*, all of the indictment's money-laundering counts should be dismissed because the funds allegedly involved are not, and are not alleged to have been, criminal "profits." (Doc. 91, at 6-7) Defendants have not satisfied this Court, however, that Counts 11-25 present a merger problem. Moreover, the Supreme Court has held that "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Chenaur*, 552 F.2d 294, 301 (9th Cir. 1977) (*citing Hamling v. United States*, 418 U.S. 87, 117-18 (1973)). While an indictment need not recite exact statutory language, *United States v. Rodriguez*, 360 F.3d 949, 958 (9th Cir. 2004), the statutory language "may be used in the general description of the offense, but it must be accompanied with such a statement of facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Id.*

A complete failure to recite an essential element of the charged offense is not a minor or technical flaw, but is fatal to the indictment, and requires dismissal. *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005)(quoting *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999). The fact that an indictment that fails to contain additional information beyond the essential elements, however, does not constitute a fatal defect. *United States v. Godinez-Rabadan*, 289 F.3d 630, 634 (9th Cir. 2002).

The SSI employs the term "proceeds" and thus sufficiently reflects the statutory elements of the offense and apprises Defendants of the charges against them. The Court

need not decide whether "profits" is an essential element of the money-laundering charges in this case until Defendants have satisfied the Court, through evidence presented at trial, that the charges present a merger problem. *See United State v. Finch*, 2010 WL 3938176 (D. Hawaii) ("even if there is a merger problem ... it does not necessarily follow that pretrial dismissal is the remedy) "For a host of predicate crimes, merger would depend on the manner and timing of payment for the expenses associated with the commission of the crime." *Santos*, 553 U.S. at 516. Moreover, the Ninth Circuit has refined the "merger rule" further, stating that "we decline to endorse a merger rule that would reward criminals for increasing nefarious behavior by taking additional steps to avoid justice." Accordingly, until the parties have had a full and fair opportunity to present evidence on the "merger" of the money-laundering counts, as charged, any decision on the applicability of the "merger" rule would be premature.

Absent a substantial showing of a "merger" problem in the pre-trial proceedings[4], the Magistrate Judge recommends that the District Court consider deferring any consideration of the issue until after presentation of the evidence. First, because determination of a "merger" problem is fact intensive, and second, because determination of a "merger" problem is the first step in a two step inquiry. If in fact a "merger" problem is established, then the second step would be the necessity for a factual determination that the "proceeds" alleged in the money-laundering counts were or were not "profits," an allegation that the Government has said they can in fact prove. Accordingly, the Magistrate Judge recommends that the District Judge find that pre-trial dismissal of the

---

[4] Given the Supreme Court's concern in *Santos* that the merger problem existed because Congress could not have intended "a transaction that is a normal part of a crime it had duly considered and appropriately punished elsewhere in the Criminal Code to *radically increase the sentence for that crime*" 553 U.S. at 516 (*emphasis added*), and the Government's assertion that the statutory maxima for the money-laundering charges in this case are equal to or lower than the underlying unlawful conduct (Doc. 129, at 7), it is unlikely that such a merger problem would be found intrinsic to the SSI.

- 11 -

SSI on the basis of the Supreme Court's ruling in *Santos* is not warranted.

B.     Section 1957 - Criminally Derived Property

Defendants Renzi and Sandlin contend that, aside from the arguments for dismissing the indictment based on *Santos*, the Section 1957 offenses alleged in Counts 16 through 25 are vulnerable for a second, independent reason: The indictment does not allege that the funds involved in these transactions were derived from the sale of the San Pedro Property. Rather, Defendants asserts that public records demonstrate the funds in question were derived from a loan that is not alleged to have been wrongfully obtained. Since the funds constitute legitimate loan proceeds, they cannot be said to constitute criminal profits or proceeds. (*See* Doc. 91 at 3; and Doc. 93 at 6)

The Government asserts that, while the loan is not alleged to have been wrongfully obtained, the evidence at trial will prove that these are monetary transactions in criminally derived property under the Government's theory that the transfer of the money, even if it was a legitimate loan, was itself an act of honest services wire fraud under 18 U.S.C. § 1343, as alleged in Counts 6 and 7, and is therefore the proceeds of wire fraud, or as the proceeds of the Hobbs Act (extortion) charged as a separate and independent basis to taint the money that Renzi received from Sandlin.

Whether the records demonstrating the loan are public or not, the proper procedure for raising a challenge to the sufficiency of the Government's evidence to support a finding of a predicate act, which has been sufficiently alleged in the indictment, is by a motion for judgment of acquittal under Rule 29 and not by a pretrial motion to dismiss. *See United States v. Nukida*, 8 F.3d 665, 670 (1993).

Additionally, whether the "proceeds"[5] alleged in Counts 16-25 present a "merger" problem, and thus require the Government to prove "profits" should be denied as premature under the same rationale as discussed above.

---

[5] The Ninth Circuit held in *United States v. Bush* that *Santos* applies with equal force to transactions prosecuted under Section 1957. *Bush*, 626 F.3d 527 (9th Cir. 2010).

- 12 -

### IV. RECOMMENDATION

For the reasons stated above, the Magistrate Judge finds the indictment sufficient on its face as to Counts 11-25, and recommends that the District Judge enter an order **DENYING** Defendants Renzi's and Sandlin's motions to dismiss the money- laundering charges (Docs. 91, 93).

Pursuant to 28 U.S.C. §636(b) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **Any objections filed should be filed as CR 08-00212-TUC-DCB.**

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

DATED this 15th day of March, 2011.

_____
Bernardo P. Velasco
United States Magistrate Judge