IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>vs.<br><br>Richard G. Renzi, James W. Sandlin, Andrew Beardall, and Dwayne Lequire,<br><br>Defendants. | No. CR 08-212-TUC-DCB-(BPV)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant Richard Renzi's motion for an order to show cause why the Government should not be held in contempt for violations of Federal Rule of Criminal Procedure 6(e) (Doc. 94).

The Magistrate Judge having considered the briefing, arguments and exhibits presented, recommends that the District Court enter an order DENYING the motion (Doc. 94).

**I. PROCEDURAL HISTORY**

Defendant Renzi filed a motion for order to show cause (Doc. 94), with supporting exhibits A-I, (Docs. 94-2–94-10). The Government has filed a response to the motion

(Doc. 144), with exhibit 1 attached (Doc. 144-1), and a reply was filed by Renzi (Doc. 164).

A first superseding indictment was filed on November 13, 2008 (Doc. 178), and Renzi's arguments on the motion were incorporated and applied to the superseding indictment. (Docs. 268, 304) The Magistrate Judge heard argument on the motion on December 5, 2008, and took the matter under advisement. Renzi filed a supplemental memorandum in support of his motion for an order to show cause (Doc. 451) with exhibits A-C as further support of the Government's Rule 6(e) violations. The Government responded in opposition. (Doc. 472)

Thereafter, the Government filed a second superseding indictment (SSI) (Doc. 466). The parties were directed to file supplemental briefing addressing the relevancy, if any, that the filing of the SSI had on any matter under advisement before the Magistrate Judge. (Doc. 479) The supplemental briefs were filed by both parties indicating no impact on the pending motion at issue in this report and recommendation (Doc. 511, 513) The procedural background of this case has been thoroughly summarized in this Court's order addressing the issue of severance. (*See* Doc. 557)

**II.    ORDER TO SHOW CAUSE: RULE 6(E) (DOC. 94)**

Renzi argues that the Government violated its grand jury secrecy obligations by leaking details of the investigation of Renzi to the national media. Renzi submits that the news articles submitted as exhibits establish a *prima facie* case that the government leaked grand jury matters to the press in violation of Fed.R.Crim.P 6(e).

The secrecy requirements imposed upon the grand jury are necessary to safeguard the proper functioning of the grand jury system. *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 213 (5th Cir. 1980)(citing *Douglas Oil Co. v. Petro Stops Northwest*, 441 U.S. 211 (1979) and *United States v. Proctor & Gamble Co.*, 356 U.S. 677 (1958)). Grand jury secrecy shields what has occurred, what is occurring, and what is likely to occur before the grand jury including "the identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, [and] the deliberations or questions of jurors." *In re Motions of Dow Jones & Co.*, 142 F.3d 496, 500 (D.C. Cir. 1998) (internal quotation marks omitted). A knowing violation of Rule 6 may be punished as a contempt of court. *United States v. Stone*, 633 F.3d 1272, 1275 (9th Cir. 1979); Fed.R.Crim.P. 6(e)(7).

If a defendant establishes a *prima facie* case of a violation of Rule 6(e), the district court should conduct further inquiry into the possible breach of the grand jury secrecy rule. *United States v. Rioux*, 97 F.3d 648, 662 (2nd Cir. 1996); *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989); *Blalock v. United States* F.2d 1546, 1551 (11th Cir. 1988); *but see In re United States of America*, 441 F.3d 44 (1st Cir. 2006)(expressing reluctance to adopt a *prima facie* test). A *prima facie* violation based on a news report is established by showing that the report discloses "matters occurring before the grand jury" and indicates that the source of the information includes government attorneys. *In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999); *Lance, 610 F.2d.* at 216. At this time, the court should also examine evidence presented by the government, such as

affidavits, to rebut allegations of a violation of Rule 6(e). *Lance*, 610 F.2d at 216-20; *Rioux*, 97 F.3d at 662. If, however, the court determines that the disclosures in the news reports do not reveal "matters occurring before the grand jury," then it is unnecessary to further consider the source of the disclosures or the government's evidence offered in rebuttal. *See In re Sealed Case No. 99-3091*, 192 F.3d at 1001, n.8. (After government withdrew its argument that none of its attorneys was the source of the disclosures in the news article, the only remaining issue, and ultimately the sole determinative issue, was whether the disclosure qualified as a "matter occurring before the grand jury.")

A *prima facie* showing of a Rule 6(e) violation requires the district court to determine, in a show cause proceeding, whether the government was responsible for the pre-indictment publicity and whether any information disclosed by the government was about "matters occurring before the grand jury." *United States v. Eisenberg*, 711 F.2d 959, 964 (11th Cir. 1983); *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1060 (D.C. Cir. 1998); *Barry v. United States*, 865 F.2d 1317, 1321 (D.C. Cir. 1989). At such a hearing, the burden shifts to the Government to come forward with evidence to negate the *prima facie* case.

A. <u>"Matters Occurring Before the Grand Jury"</u>

Rule 6(e) protects "the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Subpoena*, 920 F2d. 235, 241 (4th Cir. 1990)(internal citations omitted). A disclosure of "matters before the grand jury" must reveal some "secret aspect of the inner workings of

the grand jury." *United States v. Dynavac*, 6 F.3d 1407, 1413 (9th Cir.1993). The secrecy provisions of Rule 6(e) apply not only to direct and indirect disclosures of events which may reveal what occurred before the grand jury, but also to disclosures of information which foretell the grand jury's future course of conduct which contain details about the grand jury's inner workings or proceedings "such as statements which reveal the identity of persons who will be called to testify or which report when the grand jury will return an indictment." *Lance*, 610 F.2d at 216-17, n.4; *United States v. Rosen*, 471 F.Supp.2d 651, 655 (E.D. Va. 2007)(citations omitted).

Rule 6(e)'s provisions, however, do not extend to the disclosure of information obtained from a source independent of the grand jury proceedings, *see e.g.*, *In re Grand Jury Subpoena*, 920 F.2d at 242-43 (a government investigation that is truly independent of a parallel grand jury investigation does not constitute matters "occurring before the grand jury"); *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 64 (3rd Cir.1982) ("disclosure of information obtained from a source independent of the grand jury proceeding, such as a prior government investigation, does not violate Rule 6(e)" even when the information is "developed with an eye towards ultimate use in a grand jury proceeding" if it "exists apart from and was developed independently of grand jury processes.") (internal citations and quotations omitted); *Lance*, 610 F.2d at 217, (a recommendation by Justice Department officials that an indictment be sought or an opinion as to an individual's potential criminal liability even though the opinion might be based on knowledge of the grand jury proceedings does not violate the dictates of Rule

6(e), provided the statements do not reveal the grand jury information on which they are based); *United States v. Smith*, 787 F.2d 111, 115 (3rd Cir. 1986)( the issuance of a "target letter" notifying an individual that he or she is the subject of a criminal investigation, without any basis to believe the letter emanates directly from the grand jury not subject to grand jury secrecy under Rule 6(e))(citing *Lance*, 610 F.2d at 217); *accord In re Sealed Case No. 99-3091*, 192 F.3d 995 (D.C. Cir. 1999)("Internal deliberations of prosecutors that do not directly reveal grand jury proceedings are not Rule 6(e) material."); *Davies v. C.I.R.*, 68 F.3d 1129, 1130 (9th Cir. 1995)("Rule 6(e) protects only materials that 'reveal some secret aspect of the inner workings of the grand jury.'")(quotation omitted), or even evidence closely related to a grand jury investigation unless it was actually presented before the grand jury, "for the simple reason that the information was not part of what transpired in the grand jury room." *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987). "[I]t is not the information itself, but the fact that the grand jury was considering that information which is protected by Rule 6(e)." *Id.*

    Additionally, Courts have acknowledged the "common-sense proposition that secrecy is no longer necessary when the contents of grand jury matters have become public." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1138, 1140 (D.C. Cir. 2006)(internal quotation marks omitted). "Where the general public is already aware of the information contained in the prosecutor's statement, there is no additional harm in the prosecutor referring to such information." *In re Sealed Case No. 99-3091*, 192 F.3d at 1004.

B. Source

If the media reports reveal "matters occurring before the grand jury," they must also reveal the source of that information is one proscribed by Rule 6(e) to establish a *prima facie* violation. Rule 6(e) of the Federal Rules of Criminal Procedure prohibits the disclosure by government attorneys and government personnel assisting government attorneys, of "matter[s] occurring before the grand jury." Fed.R.Crim.P. 6(e)(2). Rule 6(e), however, does not impose a secrecy obligation on witnesses testifying before the grand jury. *Lance*, 610 F.2d at 217; *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005); *United States v. Radetsky*, 535 F.2d 556, 569 (10th Cir. 1976), *overruled in part on other grounds by United States v. Daily*, 921 F.2d 994, 1004 & n.11(10th Cir. 1990); *In re Investigation Before April 1975 Grand Jury*, 531 F.2d 600, 606 n.11 (D.C. Cir. 1976).

### III. ANALYSIS OF MEDIA REPORTS

Renzi submits that several news articles submitted as exhibits to his motion establish a *prima facie* violation of the grand jury secrecy rules. The Fifth Circuit has provided some general guidelines to assist the Court in analyzing the media reports. *See Lance*, 610 F.2d at 219. First, the Court must assume that all statements in the news report are correct. *Id.* Second, while the Court must parse each article individually, the Court must also consider the whole spectrum of news articles because the precise attribution of a source in one or more articles may give definition to a vague source reference in others because of their context in time or content. *Id*. The Court begins by analyzing each article

to determine if any reveal "matters occurring before the grand jury." If the Court determines that the article reveals such matters, the Court will then determine if the source can be attributed to one proscribed by Rule 6.

### A. Jennifer Talhelm, *Officials Scrutinize Arizona Land Deal*, AP, Oct. 25, 2006 (Doc. 94, Ex. B)

This article reports that a land deal involving Renzi "is being scrutinized by the U.S. attorney's office in Arizona" and that "the investigation has been under way for a few months and is still in its very early stages." This article does not reveal any matters occurring *before* the grand jury, and Rule 6(e)'s provisions do not extend to the disclosure of information obtained from a source independent of the grand jury proceedings. Neither the individual statements read in the context of this article, or in the whole spectrum of articles submitted provides any grounds to conclude that any core "grand jury material" has been disclosed contrary to Renzi's baseless assertion in his memorandum (Doc. 94, at 7).

### B. Jonathan Weisman and Dan Eggen, *Lawmaker's Influence in Land Deals Probed*, AP, Oct. 25, 2006 (Doc. 94, Ex. D)

This article also does not discuss matters occurring *before* the grand jury. The article relates that "U.S. prosecutors in Arizona have opened a preliminary investigation into whether Rep. Rick Renzi (R-Renzi) twice pressured landowners to buy a 480-acre parcel owned by his former business partner, a major backer of Renzi's political campaign." According to the article, both "the U.S. attorney's office and FBI Phoenix field office …are investigating Renzi's involvement in two land deals." According to the source, the

"inquiry is at a preliminary stage" and "[n]o subpoenas have been issued, and public developments are not likely before the Nov. 7 midterm elections."

Renzi asserts that the government officials quoted in this article leaked previously unreported information regarding "the timing of subpoenas, the target, subject matter, and length of the investigation," and therefore these disclosures make out *prima facie* violations of Rule 6(e). None of these disclosures reveal the internal workings of a grand jury, however. First, the article does not discuss "the timing of subpoenas" rather; the article stated that no subpoenas had been issued. This information does not reveal any "secret aspect of the inner workings of the grand jury." Second, while the article claims that the United States' attorney's office is investigating Renzi's involvement in the land deals, the article does not state that Renzi is the "target" of a grand jury investigation, or that the land deals are the subject matter of a grand jury investigation. Finally, while the article states the investigation is in its preliminary stages, there is nothing in the article that would indicate this refers to a grand jury investigation.

C. David Johnston, *Congressman From Arizona Is the Focus Of an Inquiry*, NY Times, Oct. 25, 2006 (Doc. 94, Ex. E)

This article disclosed that "[f]ederal authorities in Arizona have opened an inquiry into whether Representative Rick Renzi introduced legislation that benefited a military contractor that employs his father." Rather than revealing what transpired before a grand jury, the article specifically suggests that a grand jury was *not* yet involved: "the inquiry was at an early stage and that no search warrants had been issued, suggesting that investigators had yet to determine whether there was a basis to open a formal

investigation or empanel a grand jury." Even if this could be attributed to an expression of opinion by a government attorney as to Renzi's potential criminal liability, it would not be a violation of Rule 6(e) because it does not reveal any grand jury information. *See Lance*, 610 F.2d at 217, (expressions of opinions by Justice Department officials based on knowledge of the grand jury proceedings does not violate the dictates of Rule 6(e), provided the statements do not reveal the grand jury information on which they are based). Finally, the article states that "the most serious accusation involved Mr. Renzi's sponsorship of legislation in 2003 that appeared to indirectly benefit the ManTech International Corporation, a communications company based in Virginia that employs Mr. Renzi's father, Eugene, a retired Army general, as executive vice president." Again, this article reveals neither direct nor indirect disclosures of events that occurred before the grand jury, or discloses information which foretells the grand jury's future course of conduct. The information it does disclose is not protected, because it does not reflect the inner workings of the grand jury. *See Anaya, 815* F.2d at 1379 ("[I]t is not the information itself, but the fact that the grand jury [i]s considering that information which is protected by Rule 6(e).").

D. John Bresnahan, *Pre-Vote Leaks Rankle GOP*, Roll Call, Oct. 26, 20006 (Doc. 94, Ex. F)

Again, Renzi describes, without any support, that this article discusses Republican Party "insiders'" beliefs that the Justice Department's Public Integrity Section was leaking *grand jury* matters in order to influence Arizona's First District Congressional election. While the article mentions media leaks of the investigation, nowhere in the

article are these leaks ever described as "grand jury" leaks. For good reason; this article restates the information (and misinformation) from the AP and NY Times articles that Renzi is being probed by the U.S. attorney's office in Phoenix, not a grand jury, for his involvement in the land sale and that the Department of Justice, not a grand jury, is looking into a 2003 bill that Renzi introduced that indirectly benefitted the company where his father worked. The article suggests that party insiders are "wondering privately" whether "rogue elements" within the Public Integrity Unit are trying to tip the election to Democrats by leaking information so late in the cycle. The rest of the article discusses the possible motivation and impact of leaking news regarding federal corruption probes of sitting GOP lawmakers. Nothing in this article reveals "matters occurring" either directly or indirectly "before the grand jury."

E. Dennis Wagner and Billy House, *Inquiry on Renzi: Real Deal or Campaign Trickery?; Justice Official Cautions not to Jump to Conclusions About Investigation*, Ariz. Republic, Oct. 26, 2006 (Doc. 94, Ex. G)

In this article, a Justice Department official in Washington D.C., confirmed a "preliminary inquiry" of allegations about Renzi. The official also cautioned that "initial media reports contained significant inaccuracies" and had contacted at least two newspapers Wednesday about "chunks of stuff in their stories that's wrong." The official in Washington would not discuss the nature of the inquiry, stating that it was not a well-developed investigation: "'A tip comes into the department. The department is obligated to follow up... and we do that. People are assuming there is evidence of some crime,' even though that is not necessarily true."

Renzi describes this report as serving to confirm "through additional *grand jury* leaks that Congressman Renzi was the target of an investigation." (Doc. 94, p. 10)(emphasis added) Regardless of the political motivation behind the additional disclosure to the media, or whether or not the disclosures violated departmental policies or constituted ethical violations, these disclosures cannot be described as "grand jury leaks" within the meaning of Rule 6(e): the news reports at issue do not reveal the scope and direction of a grand jury's investigation, testimony before the grand jury, the actions of the grand jury, the identities of grand jury witnesses, or what had occurred or what would occur before the grand jury. The Justice Department officials' opinion, even if based on knowledge of grand jury proceedings, does not violate the dictates or Rule 6(e) provided it does not, as it did not in this case, reveal the protected inner workings of the grand jury. *See Lance*, 610 F.2d at 217.

F. John R. Wilke, *Deal Breaker: Land-Swap Plan Causes Trouble for Congressman; Mr. Renzi Offers Field to Mining Companies; Grand Jury is Active*, The Wall Street Journal, April 21, 2007 (Doc. 94, Ex. H)

This article reports that:

[Renzi's] chief of staff resigned and began cooperating secretly with the Federal Bureau of Investigation, <u>according to witnesses and others close to the case</u>. The FBI began a preliminary inquiry that was first reported in October, just before Mr. Renzi was elected to a third term.

That investigation has now become a formal public-corruption probe by a federal grand jury in Tucson. On Thursday the grand jury authorized a search warrant of a Renzi family business. Investigators have uncovered evidence that Renzi received a cash payment from his former business partner, funneled through a family wine company, after a second investor group pursuing an unrelated land swap agreed to pay $4 million for the alfalfa field, <u>according to people contacted in the course of the two year</u>

> investigation.
>
> …
>
> Mr. Aries, Resolution executives and others involved in the proposed transactions have been interviewed about the matter by the FBI, <u>people close to the case say.</u>
>
> …
>
> One focus of the FBI's current investigation is whether Mr. Renzi profited from the sale of Mr. Sandlin's land to the Petrified Forest group, <u>people close to the case say.</u> Federal investigators have been asking questions about a May 2005 payment of $200,000 from Mr. Sandlin to Mr. Renzi, which was sent the same day that Mr. Sandlin received the first payment from the Petrified Forest group, <u>these people say.</u>
>
> …
>
> Executives of Resolution and participants in the Petrified Forest group are cooperating with the FBI in its investigation, <u>people close to the case said.</u>
>
> The Petrified Forest group is not being investigated for any possible wrongdoing.

(<u>emphasis added</u>)

Renzi maintains that this story reveals the identities of cooperators and individuals interviewed by federal investigators, and the overall direction of the investigation. (Doc. 94, at 12) Renzi also maintains that the story clearly identified Renzi as the target of a grand jury investigation. (Doc. 164, at 6)

The disclosure that Renzi's chief of staff was secretly cooperating with the FBI, or that other individuals were interviewed by federal investigators, does not sufficiently reveal "matters occurring before the grand jury," as it discloses only that Renzi's former chief of staff was cooperating with the FBI, and that other individuals were being interviewed by the FBI. The article does not reveal that this evidence had been, or would

be, presented to a grand jury.

Contrary to Renzi's assertion, the article does not directly identify Renzi as the formal target of a grand jury investigation. The article states that the investigation has become a "formal public-corruption probe by a federal grand jury in Tucson" which the Court finds is the only disclosure in the article which reveals a matter occurring before the grand jury. The statement that the "*grand jury* authorized a search warrant of a Renzi family business" is incorrect. While the Court is to initially assume all statements as true, for purposes of analyzing media reports, this statement cannot reveal the inner workings of the grand jury because a grand jury, while authorized to issue subpoenas, cannot authorize a search warrant. *See In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 854(9th Cir. 1991). Moreover, the Court takes judicial notice that the sealed record in this case demonstrates that the search warrant was in fact authorized by United States District Judge Jorgenson.

The statement that the investigation has become a formal grand jury public-corruption probe, is not attributed directly to any source, certainly not a government attorney or official. The information that a grand jury was sitting in Tucson[1] and conducting a public-corruption probe could have come from witnesses that had received subpoenas, which the Defendant's exhibit I states had begun issuing at the beginning of

---

[1] The Court's *in camera* review of the Government's *ex parte* submission also demonstrates that this statement is false as it pertains to a grand jury investigating a public-corruption probe sitting in *Tucson,* AZ. Subpoenas at this time were being issued by a grand jury empanelled in Phoenix, AZ. (Sealed Doc. 926) Because this information is false, it makes it much less likely to be information leaked from a prohibited source, who would have had access to accurate information.

the year. Though the Court recognizes a duty to consider the spectrum of news articles collectively because the precise attribution of a source in one article may give definition to a vague source reference in others, *see Lance*, 610 F.2d at 219, the information disclosed in this article, that a grand jury has been empanelled and is now investigating a public-corruption matter is neither contextually nor temporally related to the medial leaks prior to the election which were attributed to government officials.

Renzi also asserts that the story reveals the overall direction of the investigation; such "[l]eaks of information from law enforcement investigations that relate to matters under grand jury investigation do not concern 'matters before the grand jury,' unless, of course, they disclose secret details about proceedings inside the grand jury room." *Rosen*, 471 F.Supp.2d at 655. None of the information in this article, with the exception of the statement that a federal grand jury is conducting a public-corruption probe, discloses secret details about proceedings inside the grand jury room, and this statement is not attributed to any source.

Assuming, for the sake of argument, that all of Renzi's assertions are correct, that the alleged statements do describe grand jury matters; the articles do not reveal the source of the statements to be one proscribed by Rule 6(e), as the disclosures are attributed to "witnesses" who are not a proscribed source, *see* Rule 6(e), and "others close to the case" and to "people contacted in the course of the two year investigation." While inferences can be drawn from phrases such as "people familiar with the federal probe," "federal officials," "an official familiar with the probe," "officials close to the jury's activities,"

"government officials familiar with a federal probe," and "law enforcement officials," *see Matter of Grand Jury Investigation (90-3-2)*, 748 F.Supp. 1188, 1211 (E.D. Mich. 1990), the information revealed in the news article must be considered in determining whether a Rule 6(e) source is identified. *Lance*, 610 F.2d at 217. The relationship is reciprocal; the more likely that a disclosure could only have come from a prohibited source, the less specificity is required in designating a proscribed source to establish a *prima facie* violation. *Id.* at 218. For example, if an article reports that following the presentation of specified evidence at a future time, the grand jury plans to return an indictment against named persons, the attribution of such information to "sources close to the investigation" might suffice to establish a *prima facie* violation. *Id.* On the other hand "if the article merely discusses the testimony of a witness before the grand jury, such information could have originated from a number of sources, including the witness himself or the grand jurors." *Id.*, at 218 & n.9. In this case, too many inferences can be drawn from the phrase "others close to the case" to attribute these statements to government attorneys without further support in the article for drawing such an inference. The information disclosed in this article could have come from a preliminary FBI investigation, from witnesses who were interviewed or matters occurring before the grand jury, so the information revealed requires a rather direct attribution to a prohibited source to establish a *prima facie* violation. Additionally, the Fifth Circuit also instructs that when an article occasionally makes references in an article to government attorneys or officials as the source of information that does not violate Rule 6(e), the occasional references cannot be used to

show that more serious disclosures in the same article that are attributed to such vague origins as "sources close to the investigation" were made by the Justice Department in the absence of any indication from the nature of the material disclosed that some likelihood exists that it did originate with the Justice Department. *Id.* at 218, & n.10. In this case, there are no references attributed to government sources at all, so the Court need not consider if any of the sources attributed to vague origins could also be attributed to government attorneys.

The source to which the alleged grand jury material is attributed in the article is cited as "others" or "people close to the case." The ambiguity of this phrase, combined with the countless possible sources from which such information could have originated, outside of prohibited sources, prevents this Court from attributing this phrase to a prohibited source. The content of the article clearly indicates that witnesses had been interviewed for the article. For example, Mr. Aries, a member of the Petrified Forest group who supplied extensive information for the article related to the land transactions, while declining to discuss the content of his conversations with the FBI, did not deny that he had been interviewed and supplied a significant amount of information to reporters about the land transaction at the heart of the public-corruption probe, even stating that Renzi offered to give their swap a "free pass" if the Petrified Forest group purchased the Sandlin Property. The statement that witnesses were interviewed by the FBI, and even more specifically, that the FBI was asking them specific questions, does not appear to reveal any information that could only be based on a source's knowledge of grand jury

proceedings nor does it disclose any information about the activities of the grand jury. This article fails to establish a *prima facie* Rule 6(e) violation.

G. John R. Wilke and Evan Perez, *Delays in Renzi Case Raise More Gonzales Questions*, The Wall Street Journal, Apr. 25, 2007 (Doc. 94, Ex. I)

This article reports that the grand jury had been in place since the last year, that federal agents opened the case no later than June 2005, yet witnesses didn't get subpoenas until early this year, and that the first publicly known search was carried out just the last week. The article also discusses the difficulty federal investigators had getting Justice Department approval to investigate Renzi, and for approval to issue search warrants, subpoenas, and other legal tools. The article also mentions that people briefed on the case also said investigators in Arizona asked Washington for clearance for the wiretap, a highly unusual step against a sitting member of Congress, months before Election Day, and that the wiretap was eventually approved and in place by late October. The article also stated that in October, before the election, news accounts had reported that an "unidentified Washington law-enforcement official described the matter as 'preliminary.'" None of these disclosures reveal matters occurring before the grand jury.

After a thorough review of Defendant's submitted exhibits, the Magistrate Judge finds that Defendant Renzi has failed to demonstrate a *prima facie* violation of Rule 6(e).

H. Transcripts: U.S. House of Representatives Committee on the Judiciary

Renzi has also submitted transcripts obtained from the U.S. House of Representatives Committee on the Judiciary's investigation into the U.S. Attorney firings by former United States Attorney General Gonzalez as support for his argument that the

Government's decision to leak grand jury matters regarding the investigation of Congressman Renzi to the press indicates that the White House appears to have encouraged the Government's leaks for partisan political reasons.

The Court has thoroughly reviewed Defendant's supplemental exhibits. The supplemental exhibits do not alter this Court's opinion that the six submitted media reports do not demonstrate a *prima facie* violation of Rule 6(e). In fact, though Renzi again insistently characterizes the leaks as *grand jury* leaks, the Court reviewed the transcripts in their entirety[2], and found that nowhere in the transcripts are the leaks described as *grand jury* leaks. Because the leaks that occurred do not violate Rule 6(e), it is irrelevant what considerations, political or otherwise, motivated the leaks.

**V.     RECOMMENDATION**

The Magistrate Judge finds that after a thorough review of all of the news articles submitted in support of Defendant's motion, considered separately and as a whole, only one brief statement in one article disclosed any matter occurring before the grand jury, that in fact a grand jury was investigating a public-corruption matter, and that this disclosure was not attributed in that article, or by reference to the other articles, to a prohibited Rule 6(e) source. Therefore, the Magistrate Judge finds that Defendant has failed to demonstrate a *prima facie* Rule 6(e) violation.

Accordingly, the Magistrate Judge recommends that the District Judge DENY the motion for order to show cause (Doc. 94).

---

[2] http://judiciary.house.gov/issues/issues_WHInterviews.html

Pursuant to 28 U.S.C. §636(b) and Rule 59 of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. If objections are filed, the parties should use the following case number: **Any objections filed should be filed as CR 08-00212-TUC-DCB.**

Failure to file objections in accordance with Fed.R.Crim.P. 59 will result in waiver of the right to review.

Dated this 21st date of November, 2011.

_____
Bernardo P. Velasco
United States Magistrate Judge