WO

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

United States of America,   )
          )
   Plaintiff,    )
          )  CR 08-212 TUC DCB (BPV)
v.         )
          )  **O R D E R**
Richard G. Renzi, James W. Sandlin, and)
Dwayne Lequire,     )
          )
   Defendants,   )
_____)

   The Court accepts and adopts the Magistrate Judge's Report and Recommendation (R&R) as the findings of fact and conclusions of law of this Court and denies Defendant Renzi's Motion to Dismiss the Money-Laundering Counts (11-25) and Defendant Sandlin's Motion to Dismiss the Money Launder Counts (11-25).

MAGISTRATE JUDGE'S RECOMMENDATION

   On March 15, 2011, Magistrate Judge Bernardo P. Velasco issued a Report and Recommendation (R&R). (Doc. 894.) The Magistrate Judge found that the Second Superseding Indictment (SSI) adequately "sets forth two money-laundering theories: concealment money laundering 1956(a)(1)(B)(i) penalizes financial transactions intending to conceal the nature, location, source, ownership and control of the proceeds of specified unlawful activity, while § 1957 addresses monetary transactions involving criminally derived property exceeding $10,000 in value derived from specified unlawful activity." (R&R at 6.) For purposes of the money laundering counts in this case, the specified unlawful activities are extortion and honest services wire fraud.

The Magistrate Judge rejected Defendant Renzi's assertion that *United States v. Santos*, 553 U.S. 507 (2008), a post indictment Supreme Court decision requires dismissal of the money laundering counts.   This Court will not repeat, here, the *Santos* analysis provided by the Magistrate Judge in the R&R because it needs no further development, clarification, or supplementation.

STANDARD OF REVIEW AND CONCLUSION

The duties of the district court in connection with a R&R are set forth in Rule 59 of the Federal Rules of Criminal Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1).  "The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b); *see also* Fed. R. Crim. P. 59(b)(3).

Where the parties object to a R&R, "[a] judge of the [district] court shall make a *de novo* determination of those portions of the [R&R] to which objection is made." *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985) (quoting 28 U.S.C. § 636(b)(1)(C)). When no objection is filed, the district court need not review the R&R *de novo*. *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir. 2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir. 2003) (en banc).  Therefore, to the extent that no objection has been made, arguments to the contrary have been waived.  *McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); *see also*, Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation).

The Court has considered the Objection filed by the Defendants,[1] the Government's Response, and the parties' briefs considered by the Magistrate Judge on the Motions to Dismiss the Money Laundering Courts (11-25).

OBJECTIONS

The Defendants reurge the arguments presented to the Magistrate Judge and argue the R&R wrongly decided the issues. Defendants assert that under *United States v. Santos*, 553 U.S. 507 (2008), the term "proceeds" used in the money laundering statutes require the Government to establish that the money laundering transactions involved profits from specified unlawful activities, not just receipts from unlawful activities.

"The Ninth Circuit reads *Santos* as holding that 'proceeds' means 'profits' if viewing 'proceeds' as mere 'receipts' would present a merger problem." *United States v. Finch*, 2010 WL 3938176 * 5 (Hawaii 2010) (citing *United States v. Van Alstyne*, 584 F.3d 803, 814 (9th Cir. 2009). "In other words, under *Santos*, 'proceeds' as used in 18 U.S.C. § 1956 means 'gross receipts' except where the money transfers are 'inherent' in the scheme.'" *United States v. Wilkes*, 662 F.3d 524, 549 (9th Cir. 2011).

This translates into a two-step inquiry: 1) does a merger problem exist and 2) if yes, can the Government establish the money laundering counts were profits. The Magistrate Judge did not "speculate" that the two-step inquiry would be fact-intensive. The Magistrate Judge simply followed the recommended practice in the Ninth Circuit which requires an analysis of the particular facts of the case to determine whether the alleged money laundering transactions were a central component of the specified unlawful activity. (R&R at 9) (discussing as an example

---

[1] Sandlin joined in Renzi's Objection. (Doc. 900.) Additionally, Sandlin notes that Renzi's Objection at page 3 n. 3, asks the Court to dismiss count 13 because it does not involve Renzi and alleges only that Sandlin purchased by cashier's check a boat. Sandlin notes that count 13 alleges Sandlin paid for the boat with proceeds from the $1,100,000 received by Sandlin for the sale of the San Pedro property. Therefore, Sandlin argues count 13 must be dismissed if the Court accepts Renzi's overarching argument that all the counts involving these proceeds fail because of insufficient evidence of profits. The Court rejects both of Renzi's arguments as to count 13 and notes the Government asserts it will show that the boat was purchased by Sandlin for Renzi.

- 3 -

*Van Alstyne*, 584 F.3d at 814-16), *see also*, *Santos*, 553 U.S. at 516 (explaining for a host of predicate crimes, merger would depend on the manner and timing of the payment for the expenses associated with the commission of the crime). Only if the Court concludes after the evidence is presented that a merger problem exists, then the Court must determine that the proceeds alleged in the money-laundering counts were or were not profits instead of gross receipts. Rule 29 of the Federal Rules of Criminal Procedure is the appropriate mechanism to challenge the sufficiency of the Government's evidence. (R&R at11-12.)

Defendants argue the Government will be unable to take the second step as to counts 12 through 15, which involve transactions related to $1,100,000 that Sandlin received from the Aries group. Defendants argue these money laundering counts could not involve any profits because the public records establish that Defendant Sandlin spent at least $1,140,000 to buy the property. It does not matter what price Defendant Sandlin paid for the property, however, because the purchase of the property is not an alleged part of the extortion or honest services wire fraud schemes. "'What counts is whether the receipts from the . . . unlawful act exceeded the costs fairly attributable to it.'" *United States v. Jenkins*, 633 F.3d 788, 806 (9th Cir. 2011) (quoting *Santos*, 553 U.S. at 520).

Defendants argue the Government will be unable to take the second step as to counts 16 through 25, which involve transactions related to what Renzi asserts was a legitimate $533,000 loan. As alleged in the honest services wire fraud counts 6 and 7, the Government asserts that the legitimate loan was a smokescreen to assist Defendants in concealing the proceeds the Defendants extorted from the Aries group, which was the goal of the money laundering scheme.[2]

This is not a merger case like *Santos* where a transaction that is a normal part of the predicate crime, considered and appropriately punished for that predicate offense in the Criminal Code, automatically translates into a radically increased sentence when considered for

---

[2] The Court having rejected Renzi's argument to dismiss the predicate honest service wire fraud counts under *Skilling*, (Doc. 966: Order), the Court denies this as a basis, independent of *Santos,* to dismiss counts 16 through 25.

a money laundering charge.  In *Santos*, the payment of lottery winnings necessary for a conviction for operating an illegal gambling business formed the basis for money laundering charges.  Here, the Government asserts that the statutory maxima for the money laundering charges in this case are equal to or lower than the underlying unlawful conduct.  (R&R 11) (citing Doc. 129: Government Response at 7).  There being no increased sentencing ramifications, it is questionable whether *Santos* applies.

Additionally, the transactions supporting the money laundering counts are not alleged as conduct supporting the predicate counts of extortion and honest services wire fraud.  For example, as Defendants argue counts 12 through 15 "involve" transactions related to $1,100,000 that Sandlin received from the Aries group, but these counts allege transactions made after Sandlin received the $1,100,000 in proceeds from the Aries group.  The same applies to counts 16 through 25, which Defendants assert "involve" transactions related to a legitimate $533,000 loan.  In addition to disputing the legitimacy of the $533,000 as being tainted, the Government asserts counts 16 through 25 reflect transactions downstream from the actual loan being deposited into Sandlin's account.  It remains to be determined based on the evidence presented at trial whether the transactions alleged in the money laundering counts were central to carrying out the extortion and honest service wire fraud schemes.  *United States v. Bush*, 626 F.3d 527, 537-538 (9th Cir. 2010) (explaining that *Santos* is less an examination of the money laundering statutes and more an inquiry into its predicate crimes– for a host of predicate crimes, merger will depend on manner and timing of payments).

Renzi argues that the purpose of the alleged schemes was to enrich Congressman Renzi and Sandlin and to conceal the financial relationship between the two.  (Objection at 3 (making this argument as to counts 12 through 15); Objection at 4-5 (same as to counts 16 through 25)).  Essentially, Renzi argues the concealment aspects of the predicate fraud offenses merge into money laundering.  The Magistrate Judge noted the additional problem that merger may be triggered when multiple participants share profits and one participant's movement of proceeds downstream to the other becomes a money laundering charge.  (R&R at 9 (citing *Van Alstyne*, at 815.)  The Magistrate Judge properly concluded that under both circumstances, the focus is

on the "concrete details of the particular 'scheme to defraud' rather than on whether the predicate offense generally requires payment of the kind implicated in *Santos*.  (R&R at 9.) Again, this is an assessment which should be based on the evidence presented at trial.

Neither the parties nor the Magistrate Judge had the benefit of *United States v. Wilkes*, 662 F.3d 524 (9th Cir. 2011).  In August, the Ninth Circuit considered the conviction of Brent Wilkes on counts of conspiracy, honest services wire fraud, bribery, and money laundering. The case centered around political corruption charges against former California Congressman Randall "Duke" Cunningham for providing lucrative government defense contracts to Wilkes and others in exchange for kickbacks by way of lavish meals, trips, a houseboat in Washington D.C, and mortgage payments for his multi-million dollar home in San Diego.

Relevant here, the court affirmed Wilkes conviction for money laundering, pursuant to the same statutory charge lodged against Defendants Renzi and Sandlin: 18 U.S.C. § 1956(a)(1)(B)(i).  As part of a comprehensive discussion of money laundering, the court explained that the purpose of this statute is aimed at concealment.   Its aim is "'to reach commercial transactions intended (at least in part) to disguise the relationship of the item purchased with the person providing the proceeds and that the proceeds used to make the purchase were obtained from illegal activities.'" *Wilkes*, 662 F.3d at 545 (quoting *United States v. Sanders*,  929 F.2d 1466, 1472 (10th Cir. 1991)).   Nevertheless, transactions that create the criminally-derived proceeds must be distinct from the money laundering transaction because money laundering criminalizes a transaction in proceeds not the transaction that creates the proceeds.  *Id.* (citations omitted).  "'Having carried out a fraud of which concealment was an integral part, defendants cannot be charged with the same concealment a second time, . . . '" *Id.* (citations omitted).

The court gave the classic example of § 1956(a)(1)(B)(i) violations by drug dealers, who receive tainted money and then move it in apparently legitimate transactions trying to launder it. *Id.* (citing *United States v. Pretty*, 98 F.3d 1213, 1220 (10th Cir. 1996)).  In such a case, the laundering occurs after the underlying drug crime is complete.

In bribery-kickback schemes numerous transactions may occur between multiple participants, and the money laundering transactions may not follow in time the final kickback transaction. The courts have rejected the argument that such transactions necessarily are part and parcel of the kickback scheme and not a basis for money laundering charges. *Id.* at 545-547. The court explained that while a direct payment from one participant to the other would violate the bribery-kickback statute, the effort to disguise the source of the money was an additional act that is separately punishable under § 1956(a)(1)(B)(i). *Id.* at 546-47.

In *Wilkes*, the court focused on the purpose of the transactions and concluded the purpose of that bribery-kickback scheme would have been accomplished by a direct transaction of $525,000 from Wilkes to Cunningham. Instead of making a straightforward transaction to divvy up the joint venture's gains, Wilkes transferred the $525,000 to various and between various other entities, which provided buffers between the corrupt contract and the payoff of Cunningham's mortgage. Concealing this connection appeared to be the dominant, if not the only, purpose of these multi-layered transactions. The court found Wilkes' efforts to disguise the source of the kickback to Cunningham was an additional act that was separately punishable under the money laundering statute. *Wilkes*, 662 F.2d at 547.

Next, the court considered Wilkes' challenge to his conviction under *Santos*. First, the court noted that unlike Wilkes, Santos was convicted of subsection A, § 1956(a)(1), covering promotional money laundering crimes, and Wilkes like Renzi and Sandlin was charged with concealment money laundering under subsection B. "Promotional money laundering is 'different from traditional money laundering because the criminalized act is the reinvestment of illegal proceeds rather than the concealment of those proceeds." *Id.* at 548 (quoting *United States v. Jolivet*, 224 F.3d 902, 909 (8th Cir. 2000)). The court limited *Santos,* finding that "proceeds" as used in 18 U.S.C. § 1956 means "gross receipts," except where the money transfers are inherent to the fraud scheme. *Id.* at 549 (citing *United States v. Ferguson*, 412 Fed. Appx. 974, 975-977 (9th Cir. 2011)). Further, the court found it to be the minority view expressed in *Santos* that: "'any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares.'"

*Id.* at 549 (quoting *Santos*, 553 U.S. at 516 Scalia, J., joined by Souter, Thomas & Ginsberg, J.J.). In *United States v. Webster*, 623 F.3d 901 (9th Cir. 2010), the Ninth Circuit instructed the courts to look to the "'five Justices in *Santos* [who] expressly agreed that 'the legislative history of § 1956 makes it clear that Congress intended the term 'proceeds' to include gross revenues from the sale of contraband and the operation of organized crime syndicates involving such sales.'" *Wilkes*, 662 F.3d at 549 (quoting *Webster*, 623 F.3d at 906 (citing *Santos*, 553 U.S. at 525-26 (Stevens, J., concurring in the judgment)); *see Santos*, 553 U.S. at 529-32 & n. 1 (Alito, J., dissenting)).

The court applied *Webster*, where it held under *Santos* that where "a money laundering count is based on transfers among co-conspirators of money from the sale of drugs, 'proceeds' includes all 'receipts' from such sales." *Id.* In *Wilkes*, the court found the merger argument lacked merit because the evidence reflected the money laundering counts were based on a transfer to a co-conspirator of money from honest services fraud and bribery and such proceeds would include all receipts from the fraud. *Id.* The multiple transfers of funds were additional acts that were separately punishable under 1956(a)(1)(B)(I).

Here, the SSI uses the term proceeds in the money laundering counts, which tracks the statutory language. The SSI recites the essential elements of the money laundering offense and apprises the Defendants of the charges against them. (R&R at 10-11). It remains to be seen at trial what the evidence in the case will show, to which the Court will apply *Webster*, pursuant to the directives provided in *Wilkes*.

CONCLUSION

After *de novo* review of the issues raised in Defendants Objections, this Court agrees with the findings of fact and conclusions of law made by the Magistrate Judge in the R&R for determining the Defendants' Motions to Dismiss the Money Laundering Counts.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record, in respect to the Defendant's Objection, the Magistrate Judge's Report and Recommendation (Doc. 894) is accepted and adopted as the findings of fact and conclusions of law of this Court.

1    **IT IS FURTHER ORDERED** that Defendant Renzi's Motion to Dismiss the Money

2    Laundering Counts (Doc. 91) is DENIED.

3    **IT IS FURTHER ORDERED** that Defendant Sandlin's Motion to Dismiss the Money

4    Laundering Counts (Doc. 93) is DENIED.

5    DATED this 26th day of March, 2012.

6

7

8    David C. Bury
     United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28